FILED

2019 OCT -3  PM 3:23

U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  Name: JAMES CLARK

2  Address: 625 LACONIA BLVD LA, CA 90044

3  Telephone Phone: (310) 622-0757

4  PLAINTIFF, IN PRO PER

5  Email:

6  **UNITED STATES DISTRICT COURT CENTRAL DISTRICT**

7  **OF CALIFORNIA**

8

Case No.:   CV19-08551-DDP-PLA

9

10  COMPLAINT TO QUIET TITLE; FOR EQUITABLE
ESTOPPEL; FOR ESTOPPEL BY JUDGMENT AND
JUDICIAL ESTOPPEL; FOR DECLARATORY RELIEF AND
INJUNCTIVE RELEIF; AND FOR SLANDER

11  JAMES CLARK,

THIS PROCEEDING UNDER 28 USC.157(B)(2)(J)
NONDISCHARGEABILITY PURSUANT TO 11 USC523(A)
(4)

12

13          Plaintiff(s),
    (1) QUIET TITLE
    (2) WIRE FRAUD

14  v.
    (3) BREACH OF FIDUCIARY DUTY
    (4) UNFAIR BUSINESS PRACTICES

15  RITA GAIL FARRIS-ELLISON, LENDERS
    ESCROW, INC, JUST THAT EZ
    (5) WRONGFUL FORCLOSURE
    (6) INJUNCTION

16  FINANCIAL, DOE FLAGSTAR BANK AND
    DOES 1 TO 100 INCLUSIVE
    (7) ILLEGAL BUSINESS PRACTICE
    (8) DECLATORY RELIEF

17
    (9) CANCELLATION OF WRITTEN
    INSTRUMENT

18          Defendant(s).
    (10) SLANDER OF TITLE

19
    (11) NEGLIGENCE

20
    (12) FRAUD
    (13) TO VOID OR CANCEL
    TRUSTEES DEED UPON SALE

21
    (14) BREACH OF THE IMPLIED
    COVENANT OF GOOD FAITH AND

22  PAID
    FAIR DEALING

23  OCT - 3 2019
    (15) UNJUST ENRICHMENT
    (16) VIOLATION OF CALIFORNIA

24
    BUSSINESS AND PROFESSIONS
    CODE SECTIONS 17200 ET SEQ.

25  Clerk, US District Court
    COURT 4612
    DEMAND FOR JURY TRIAL
    AMOUNT DEMANDED

26
    $2,000,000.00
    TRIAL DATE:

27
    TIME:
    COURTROOM:

28
    RE

```
)    Trial: DATE:
)          TIME:
)          DEPT.:
)
)
)
```

TO THIS HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiffs hereby allege as follows:

## PARTIES

1-PLAINTIFF, JAMES LEE CLARK (hereinafter "PLAINTIFF" or I), is and has been a resident of the City of Los Angeles all of his life and a resident of his current home since October 13,2008 comes now and commences the present civil action.

2- Defendant "RITA GAIL FARRIS-ELLISON" (hereinafter "DEFENDANT and or RITA"), is and has been a resident of the City of Los Angeles, with a current address of 1921 W 36th St. Los Angeles, CA 90018.

3-DEFENDANTS "LENDERS ESCROW, INC", (hereinafter "DEFENDANT and or Lenders Escrow") was an active corporation doing business at the time of the alleged incident stated by Mr. James Clark, unknown business address at this moment.

4- DEFENDANTS "JUST THAT EZ FINANCIAL", (hereinafter "DEFENDANT and or JUST THAT EZ) was an active corporation doing business at the time of the alleged incident stated by Mr. James Clark, unknown business address at this moment.

5- DOE Bank (hereinafter "DEFENDANT and or DOE BANK) was an active corporation doing business at the time of the alleged incident stated by Mr. James Clark, unknown business address at this moment.

-2-

6- And DOES 1 to 100 INCLUSIVE for adverse possession, other causes of action including monetary damages and for equitable relief.

7- "All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title Thereto" are sued herein pursuant to California Code of Civil Procedure Section 762.020(a).

8- Plaintiffs does not know the true names and capacities of the defendants sued herein as DOES 1 through 100 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names.  Plaintiffs are informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein.  Plaintiffs will amend this Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

9- Plaintiffs are informed and believe and based on such information and belief aver that Defendants RITA GAIL FARRIS and DOE Defendants 1 through 100, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

10- Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

I.

## FACTUAL ALLEGATIONS

11. I am a citizen of the State of California and the legal and equitable fee simple owner ( my mom deeded her interest in the property to me in October 2008) of the real property located at 625 Laconia Boulevard, in the City of Los Angeles, State of California with a zip code of 90044. The legal description is

*"The land referred to in this description situated in the State of California, County of Los Angeles, City of Los Angeles, and is described as follows:*

*LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY."* (See Exhibit "A")

APN # **6117-014-014**

12. I have resided at the property for years so in October 13, 2008, I executed a promissory note in the amount of $300,000.00 in favor of Flagstar Bank which the note was secured by a deed of trust (dot) recorded on October 21, 2008 against my property as instrument number **#2008187051.** Importantly, per the loan, **I can cancel said the loan and you were obligated to return the funds that I paid you to me.** Moreover, I do not know the names of the defendants all persons unknown, claiming any legal or equitable right, title, estate, lien to my property described above and adverse to my title. So, these Does 1 to 100, inclusive and I therefore sues them by those fictitious names. I will as soon as possible amend the names, capacities and relationships of the afore-mentioned Does 1 to 100, inclusive.

13. The purpose of the loan was for me to net $50,000.00; then I was to purchase a residential apartment building. So, Rita Farris-Ellison handled my escrow a licensed real estate agent through her business, Lenders Escrow, Inc. Now, according to the escrow instructions as contained in the *HUD-1 Settlement Statement.* (See Exhibit "B"), I was to receive the $50,000.00 but I did not. Ms. Farris-Ellison petitioned the United States Bankruptcy Court- *2:12-*

-4-

*bk-33861-RK* to discharge my $100,000.00 judgment that I won in superior court. **(Case # TC023636)** (See Exhibit "C"-the docket sheet). In the bankruptcy court, I filed my adversary proceeding objecting to her discharging my state court judgment. *2:12-ap-01830-RK*. Ms. Farris cashed a check without a legal account.

14. Regarding the $50,000.00, I continued to discuss with Flagstar Bank where is my $50,000.00 that Flagstar Bank wire transferred to Rita Farris because per Flagstar Bank, Rita Farris received the money- but I sued her for the money. And the court ruled in my favor. See **(Case # TC023636)**. In **(Case # TC023636)**, I was awarded a judgment against Rita Farris for breach of her fiduciary duty and she caused me emotional stress. Her breach of her fiduciary duty caused my property to enter a wrongful foreclosure and she defrauded me out of my money (See Exhibit "D", the state court judgment that she breached her fiduciary duty/capacity to me). Moreover, Farris was investigated by the California Department of Real Estate (CDRE) and they found her guilty of serious misconduct. (See Exhibit "E" the decision/order.)

15. But, Flagstar Bank never produced any evidence of that specific wire transfer so they took my $50,000.00 and converted it. Additionally, Flagstar Bank acted with Rita to commit fraud against me by taking my money. They told me they had a protection letter that would protect me from fraud. Flagstar Bank used the court system to bamboozle me from collecting my money-they bamboozled me from filing a claim with the title company.  Under their protection letter that Flagstar Bank did not uphold; they need to cancel my dot and send me a paid in full dot with a dot stating that I own the property. Flagstar Bank committed an illegal business practice by sending money to an illegal account and they committed fraud when they sent the money to an illegal account.

16. Before the loan was funded my mother deeded the property to me and because of that deed being recorded, my property was reassessed for tax purposes.  I challenged the reassessment and advised Flagstar Bank of my tax appeal. I strongly advised Flagstar Bank not to pay the taxes during this period-but Flagstar Bank rejected my request and paid the taxes-approximately $9,000.00 in property taxes during the tax appeals pendency. My tax appeal was

successful and I tendered the money to Flagstar Bank-they refused. To this day, Flagstar Bank has refused to accept my tender. Moreover, in 2010, Flagstar Bank force-placed property insurance on my home. I had homeowner's insurance policy for years. I have tendered and continued to tender to Flagstar Bank proof of my homeowner insurance policy. But Flagstar Bank refuses for years to refund my $3,500.00 to my mortgage account.

17. On May 18, 2010, Flagstar Bank wrongfully initiated a non-judicial foreclosure in which Flagstar Bank started to record a notice of default (NOD) and election to sell. It was wrongful because I had paid my mortgage but as stated-Flagstar Bank refused my payments.

18. Before this lawsuit, I sued Flagstar Bank in 2009, (*TC023636*), unfortunately, though the trial court case judge dismissed Flagstar Bank. Later, I filed for my personal bankruptcy in 2011 (*2:11-Bk-17199-SK*). Unfortunately, my adversary proceeding (*2:13-AP-01937-SK*) was dismissed.

19. Again, in March 26, 2014, Flagstar Bank recorded a second NOD and election to sell the Property. And now, Flagstar Bank has filed a third NOD and Election to Sell. Per that NOD, my property was in arrears over $116,000.00 which consisted of attorney fees-which Flagstar Bank is not legally entitled to under the attorney fees provisions of my promissory note and deed of trust (DOT). So, on July 21, 2014, based upon the numerous violations by Flagstar Bank, I sued Flagstar Bank for foreclosure violations.

20. On June 3, 2015, Flagstar Bank approved me for a trial loan modification plan pursuant to the federal *Home Affordable Modification Program (HAMP).* As attached as Exhibit and the terms of the agreement are incorporated into my complaint by reference. I accepted the trial period plan (tpp) and so did Flagstar Bank in which I was to pay Flagstar Bank on July 1, 2015, $1,622.44. Then on August 1, 2015, I paid another $1,622.44. Later, I paid another $1,622.44 on September 1, 2015. I have continued to pay-to make my payments from October 2015 to January 2016. Flagstar Bank has accepted my payments. Yet, I never any funds prior to this. In sum, I fully complied with the tpp.

21. On September 3, 2015, Flagstar Bank sent me a letter stating that "Congratulations, I entered into the **Home Affordable Modification Trial Program Plan (HAMTPP)**." I was relieved and ready for the HAMP program. However, Flagstar Bank has refused to issue a final decision on my HAMP trial modification. As a result of these actions and the fear that Flagstar Bank will foreclose without justification, I suffered medical health problems-I suffered a heart attack. Flagstar Bank has continued to financially damage me by not accounting or crediting for my payments and taking illegal actions against me. Moreover, I am pursuing litigation against Flagstar Bank to protect my home from possible foreclosure by Flagstar Bank.

22. On or before December 2016 to the present, I became concerned-worried that Flagstar Bank will again conduct these unlawful foreclosure actions against my property. For example, I have paid the mortgage payment-the $1,622.44 to Flagstar Bank to their address located in Troy, Michigan. But Flagstar Bank has refused to credit my account, send me a statement- an accounting of what payments are paid and what payments are next. In fact, Flagstar Bank has not notified me of the final decision as required of my loan modification per the HAMP and they have also returned my tendered payments-without justification. So, on January 10, 2017, I wrote to Flagstar Bank demanding the status of my loan modification. Flagstar Bank's Mr. Hernandez gave me no usable information. So, I again on January 18, 2017, I wrote to Flagstar Bank demanding status and why is my loan payments not being properly credited and deducted from my loan. With no response, I wrote again to Flagstar Bank on January 19, 2017 again demanding status and why Flagstar Bank has not credited my account. Indeed, I have paid Flagstar Bank over $20,000.00 since July 2015 to the present so I know that my mortgage payments are not in delinquent; they are current. At no time, has Flagstar Bank attempted to resolve the matter. Before this filing, I have paid almost $20,000.00 to Flagstar Bank. Illustratively, Flagstar Bank Did not protect me from "fraud" and dishonesty by Rita. (See Exhibit "G" the protection letter from First American Title Insurance providing that Flagstar Bank is to protect me-the borrower from fraud or dishonesty like a breach of Rita's fiduciary duty to me.)

23. So, I have commenced the present litigation against all DEFENDANTS because they are claiming an interest adverse to me and my right to possess said property and to recover monies spent and for various causes of action. For example, Flagstar Bank's "Notice of Intent to Accelerate" conflicts directly with my right to possess said property. Flagstar Bank has refused in an underhanded fashion NOT to accept or credit my account properly. Illustratively, I have paid Flagstar Bank regularly with various and numerous checks or money orders.

II

## FIRST CAUSE OF ACTION
## QUIET TITLE/ADVERSE POSSESSION

24. Plaintiff incorporates the above-mentioned allegations by reference as contained in the above-mentioned paragraphs numbered 1-13. I am the owner by adverse possession of my real property located at 625 Laconia Boulevard, in the City of Los Angeles, State of California with a zip code of 90044. Plaintiff is the owner in fee simple title. Moreover, the legal description is

*"The land referred to in this description situated in the State of California, County of Los Angeles, City of Los Angeles, and is described as follows:*

*LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY."*

25. Illustratively, I have been in open and physical possession of all of my property described above by actual, open, hostile, continuous and exclusive possession. Consistent with the above, My possession has been actual, hostile, open and exclusive since 2008 in excess of the 5 year period set forth in *California Code of Civil Procedure* §§ 318, 319, 321-323 (hereinafter C.C.P.). Also, I have been in possession of the real property described above by virtue of the trust deed that was recorded in 2008. My possession has been uninterrupted and continuous and adverse to all defendants and all other persons. For all of my possession which is adverse to all defendants,

-8-

I have paid all mortgage payments, taxes, and assessments that have been requested for my property listed above for over the five year period since 2008.

25 a.

Plaintiff is informed and believe, and based upon such information and belief allege, that there is no break in the chain of title as my deed was recorded prior to the banks:

25 b.

Plaintiff seek to quiet title to their Property against the Bank and of the Defendants that they are the owners of the Property.  The Defendant's Claims are without any right whatsoever, and the Defendants have no right, title, estate, lien, or interests whatever in the above-described Property or any part. Thus, Plaintiff seek to quiet title to the Property.

## SECOND CAUSE OF ACTION
## FOR WIRE FRAUD

26. Plaintiff incorporates the above-mentioned allegations by reference as contained in the above-mentioned paragraphs numbered 1-15. Rita Farris and Flagstar Bank committed wire fraud when **she did not have a valid or legal bank account to write checks from**. Moreover, she and Flagstar Bank committed wire fraud by not establishing a specific account to handle immediate and future financial transactions; and neither did Farris or Flagstar Bank had my previous approval to send my money to someone else. Moreover, because Flagstar Bank employed Rita as their "Approved Closing Lender" Flagstar Bank committed fraud-wire fraud by not confirming exactly what Rita lawfully had. By her having fraudulent accounts versus legitimate accounts she and Flagstar Bank intentionally violated the *California Financial Code §11202(b)*. And because Flagstar Bank did not confirm the escrow accounts they were complicit in Defendant, Farris's misconduct-including the illegal bank accounts.

27. These acts have caused me substantial harm and I am bereft of my personal finances and have suffered personal harm.

-9-

## THIRD CAUSE OF ACTION
## FOR BREACH OF FIDUCIARY DUTY

28. Plaintiff incorporates the above-mentioned allegations by reference as contained in the above-mentioned paragraphs numbered 1-17. Rita was a fiduciary who had a legal duty to safeguard and protect me-but she did not. Moreover, Rita had a duty of due care-she acted in the capacity of a real estate broker-a licensee of the CDRE. Indeed, so did Flagstar Bank-they had a fiduciary duty to me but they breached it by allowing Rita to take my money and she did. Flagstar Bank's breach of their duty caused me direct harm and Rita's breach has caused me the loss of my $100,000.00 state court judgment.

## FOURTH CAUSE OF ACTION FOR
## UNFAIR BUSINESS PRACTICES

29. Plaintiff incorporates the above-mentioned allegations by reference as contained in the above-mentioned paragraphs numbered 1-18. Flagstar Bank employed and so did Farris unfair practices in that 1) Farris did not pay me the state court judgment and 2) Flagstar Bank refused to accept my payments. 3) Farris and Flagstar Bank conspired to take and spend my funds all without paying me the money as required. Flagstar Bank used foul and racist language such as "nigga," and they changed their phone number for their contact person.

30. This is an unfair practice because it caused me harm-the loss of personal funds, and now the potential of losing my home.

30. A- Defendant Rita Gail Farris had no legitimate reason nor legal power to allegedly paid accounts debts belonging to the client (James Clark) without previously consulting with Mr. James Clark: that is a direct unfair business practice that goes without saying is a violation to the rights of Mr. James Clark, moreover the evidence of said debts have not been properly

-10-

documented nor provided to Mr. James Clark for his records and to verified if indeed the allegations made without his consent are truthful.

30. B- Defendant Rita Gail Farris again had no legitimate reason nor legal power to allegedly transfer funds that allegedly belong to Mr. James Clark and deposited them in a non-Escrow, Non-Trust Account, again without Mr. Clarks consent or knowledge. This actions not only are they malicious but they're are against the law because consent is at least the very minimum that a client needs to authorize a transaction of that order, properly and legally it would have been the right thing to document this transaction and request and obtain the pertinent signatures to avoid any legal issues and to record said transaction.

## FIFTH CAUSE OF ACTION
## FOR WRONGFUL FORCLOSURE-(AGAINST FLAGSTAR BANK)

31. Plaintiff're alleges and incorporates by this reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 20. Plaintiff is informed and believes and thereon alleges that defendants breached their respective duties under Sections *§§2923 and 2924, et seq. of the California Civil Code* in that they:

(a).   ***Failed to credit and properly apply one or more and all of plaintiff's monthly payments to the mortgage account in accordance with the terms of the promissory note and deed of trust***, causing the account to appear delinquent and proximately resulting in the premature and otherwise improper commencement of non-judicial foreclosure: specifically, FLAGSTAR (i) advanced monies for a supplemental tax bill with knowledge that said bill was on appeal and charged the same to plaintiff's mortgage account before the bill was overturned, and (ii) charged to plaintiff's account approximately $3,500 for force-placed insurance

-11-

even though plaintiff had in effect during the relevant period his own homeowner's insurance policy;

(b).     Improperly, charged to plaintiff's mortgage account excessive and illegitimate trustee's fees, attorney's fees, and other legal and administrative fees that constituted unlawful liquidated damages under the promissory note and deed of trust and were otherwise prohibited by *Sections 2924c, 2924d*, and related sections of the *Civil Code*;

(c).     Failed to comply with the statutory requirements of a valid notice of default, to wit, they (i) failed to engage or attempt to engage plaintiff in financial counseling prior to the recording of the notice of default, (ii) failed to properly record and serve on plaintiff a written notice of default, and (iii) failed to state in the notice of default the amount actually required to reinstate the loan; and

(d).     Failed to comply with the statutory requirements of a valid notice of trustee sale, to wit, they (i) failed to properly record, publish, or post on the Property and serve on plaintiff notice of the sale in compliance with Section 2924f, and (ii) failed to include in the notice of sale an accurate statement of the total amount of the unpaid balance of the obligation secured by the Property to be sold and reasonably estimated costs, expenses, and advances at the time of the initial publication of the notice of sale.

(e)     Failed to properly record and or notice a statutorily mandated Notice of Default (NOD)

(f)      Failed to comply with all requirements of the *Deed of Trust (DOT)* and with the mandatory requirements as outlined in *§§2923 and 2924, et seq. of the California Civil Code*

(g)      In October 2010, and later (see above), Plaintiff and Flagstar Bank mutually agreed, orally and in writing, to modify the subject loan and avoid foreclosure. Said agreement was in effect and binding upon Plaintiff, Flagstar Bank and its agents at the time of the sale of the subject property. Flagstar Bank was responsible for keeping the trustee apprised of any developments pertinent to the validity or necessity of a foreclosure sale, including the fact or prospect of any agreement between Flagstar and Plaintiff to reinstate the loan and avoid a foreclosure sale. Despite its agreement with Plaintiff, Flagstar, by and through its agents, sold the subject property on March 11, 2011. Plaintiff's injuries, including the loss of his home, were the  proximate result of Flagstar Bank's unlawful foreclosure.

(h)  Failing by Flagstar Bank to comply with the requirements of the federal **HAMP and *the loan modification*** program since September 2015.

## SIXTH CAUSE OF ACTION
## FOR AN INJUNCTION-(AGAINST FLAGSTAR BANK AND FARRIS)

32. Plaintiff're alleges and incorporates by this reference as though fully set forth herein each and every allegation contained in paragraphs 1 through 21. On or before this date, all defendants have asserted an illegal right to foreclose on my property. All defendants promise's to foreclose on Plaintiff's property as created and exposed Plaintiff to great and irreparable injury, for which pecuniary compensation would not afford adequate relief because Plaintiff would have lost his home. All defendants threaten to resell the property to Plaintiff's great and irreparable injury, for which pecuniary compensation would not afford adequate relief because Plaintiff would have lost his home. Plaintiff seeks an injunction enjoining all Defendants from foreclosing, removing

PLAINTIFF, J CLARK'S THIRD AMENDED COMPLAINT AGAINST RHEA GAIL FARRIS-ELLISON, LENDERS ESCROW, INC. JESE HALL Z FINANCIAL FOR QUIET TITLE, EQUITABLE ESTOPPEL, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR SLANDER OF TITLE, AND FOR MONETARY DAMAGES

or evicting Plaintiff and reselling the property during the pendency of this action.

33. a.

Plaintiffs are informed and believe, and based upon such information and belief allege, that there now exist certain controversies and disputes between Plaintiffs and the Defendant's, in that Plaintiffs contend that:

32b.

Plaintiff purchased the Property, a *bona fide* purchasers for Value, and is the sole owners of the Property, and, therefore, none of the Defendant's do not have And cannot claim any ownership interest or rights of any kind in the Property; All defendant's are immediately and forever are barred, under the doctrine of equitable estoppel from asserting any claim based on their oral and written representations, conduct, and omissions, in connection with the Farris/Clark escrow, and from transferring the Clark's fee simple title to any Defendant. All Defendants are immediately and forever barred, under the doctrine of laches, based on their failure to assert any claim.

32c.

Plaintiff's property is now unmarketable and I am irreparably harmed and damaged if said court does not issue a judgment against all defendants, and any and all other Persons claiming under them, declaring that Plaintiff is the sole and rightful Owners of the Property: and that Plaintiff is entitled to a preliminary and a permanent injunction against all defendant's and any and all other persons from claiming or prosecuting against Plaintiff. Thus, Plaintiff requests a declaration of his rights.

## SEVENTH CAUSE OF ACTION
## FOR ILLEGAL BUSINESS PRACTICES

33. Plaintiff re alleges and incorporates this by reference as though fully set forth herein each and every allegation contained in paragraphs 1-22. Both defendants engaged in unfair-by taking my

-14-

money and illegal business practices-by endeavoring to illegally foreclose on my property. Thus, I have suffered financially!

## EIGHTH CAUSE OF ACTION
## FOR DECLARATORY RELIEF

34. Plaintiff re alleges and incorporates this by reference as though fully set forth herein each and every allegation contained in paragraphs 1-23.

*California Code of Civil Procedure section 1060* **states the following:**

**"1060. *Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time.***

***The declaration may be either affirmative or negative in form and effect, and the declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."***

Prior to the filing of this complaint. Plaintiff alleges that an actual, continuing and on- going controversy has manifested itself concerning their rights, duties, and obligations, involving

-15-

payments. disputes over the debt. debt collection tactics. debt collectors. legality of the debt collection.

Therefore. the ongoing and continuing controversy between all Defendants has caused Plaintiff's injury and substantial damages.

## NINTH CAUSE OF ACTION

## FOR CANCELALTION OF WRITTEN INSTRUMENT-CANCELL THE DEED OF TRUST AND THE NOTE

35. Plaintiff re alleges and incorporates this by reference as though fully set forth herein each and every allegation contained in paragraphs 1-34.

36. The written instrument sought to be cancelled in this cause of action was executed in the County of Los Angeles. State of California. Moreover. the real property is situated in the County of Los Angeles. State of California. Specifically. the legal description is

*"The land referred to in this description situated in the State of California, County of Los Angeles, City of Los Angeles, and is described as follows:*

*LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE RECORDER OF SAID COUNTY."* (See Exhibit "A")**APN #6117-014-014**

37. As stated above. Flagstar Bank approved my re-finance loan that was falsely brokered by Rita Gail Farris-Ellison and prior to the loan being funded my mother deeded the property to me. The deed of trust (DOT) with its form. contents. clauses are known to the defendants. With Flagstar Bank's letter dated May 17. 2018 indicating their illegal intent to allege a false default and then foreclose justifies cancelling the written instrument on several grounds:

-16-

a)   Defendant, Farris-Ellison was found guilty of "serious misconduct," by the California Department of Real Estate (CDRE);

b)   Defendant, Farris-Ellison illegally procured a loan because she had no legitimate real estate licenses; Rita's illegal comportment has injured me and my dot is forever damaged;

c)   Defendant, Flagstar Bank, has no legal or contractual authorization to "accelerate" my loan because a) I have paid my monthly payments-but Flagstar Bank has steadfastedly declined to credit or account for my mortgage payments to be reduced, b) no escrow or bank account

d)   I have paid over $100,000.00 in mortgage monthly payments but Defendant, Flagstar Bank  refuses to accept my payments-despite the deed and Defendant, Flagstar Bank's signature on the ***Home Affordable Modification Trial Program Plan (HAMTPP*** which required that Defendant, Flagstar Bank accept my payments-but Defendant, Flagstar Bank again has repugnantly rejected my payments.

e)   Defendant, Flagstar Bank has violated the terms, conditions, clauses of the dot and California statutes on foreclosures.

38.  My dot is void ***ab initio*** based on the illegal comportment by a) Defendant, Farris-Ellison and b) Defendant, Flagstar Bank and the dot must be cancelled.

## TENTH CAUSE OF ACTION
### FOR SLANDER OF TITLE

39.  Plaintiff re alleges and incorporates this by reference as though fully set forth herein each and every allegation contained in paragraphs 1-38. On or before this filing, and continuing to date, all of the Defendant's and Does have  willfully, wrongfully, without justification, and without privilege, invaded Plaintiffs' proper right in the Property, by publishing by written and spoken means to Plaintiffs' mortgage lender, and to various third parties, and to the public on the Internet, that the Defendant's own said property. However, these claims, assertions, statements and documents and words were and are false, untrue and disparaging to Plaintiff and my

-17-

Property, have cast doubt on the existence and or extent of Plaintiffs' interest in the Property, and disparaged Plaintiffs' title to the Property. In addition, it is reasonably foreseeable that recipients of the Defendant's words, including but not limited to Plaintiffs' existing mortgage lender or other lenders, Plaintiffs' future lenders, future potential purchasers of the Property, and title insurers in any future sale, re-financing, or mortgage transactions would be deterred from entering into any transaction that involved the Property, or such recipients would be willing to enter into a transaction only on such terms which would have significant negative economic effect of Plaintiffs. See the cancellation dated October 15, 2008.

39a.

Furthermore, the Defendant's and Does words-Flagstar Bank's lawyers are aware and directly impaired the immediate salability of the Property a future purchaser, the mortgage ability of the Property to a future lender, or the vendibility on the open market in a sum to be proved. Not only that, the Defendant's oral and written statements to Plaintiffs and third parties, including in the social media, has cast doubt on Plaintiffs' title and honesty, and made it necessary for Plaintiffs to retain attorneys and to bring this action to defend their title. Therefore, Plaintiffs are entitled to recovery attorney fees and costs. The exact amount of such damages not known to Plaintiffs and this time, and Plaintiffs will move to amend this Complaint to state such amount when the same becomes known, or on proof thereof.

39b

Plaintiff is informed and believe, and basted upon such information and belief allege, that the Defendant's and Does words and acts were motivated by oppression, fraud, and malice, thereby justifying awarding of exemplary and punitive damages according to proof.

## ELEVENTH CAUSE OF ACTION FOR
## NEGLIGENCE
## (AGAINST DEFENDANT)

40.     At all times relevant herein, the Foreclosing Defendants, acting as lender, loan servicer and Escrow Officer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Plaintiffs.

41.     In taking the actions alleged above, and in failing to take the actions as alleged above, the Foreclosing Defendants breached their duty of care and skill to Plaintiffs in the servicing of Plaintiffs' loan by, among other things, failing to properly and accurately credit payments made by Plaintiffs toward the loan, preparing and filing false documents, and foreclosing on 625 Laconia Blvd, Los Angeles, CA 90044 without having the legal authority and/or proper documentation to do so.

42.     As a direct and proximate result of the negligence and carelessness of the Foreclosing Defendants as set forth above, Plaintiffs suffered general and special damages in an amount to be determined at trial.

## TWELVETH CAUSE OF ACTION
### FRAUD

43.  The Foreclosing Defendants engaged in a pattern and practice of defrauding Plaintiffs in that, during the life of the mortgage loan, the Foreclosing Defendants failed to properly credit payments made and foreclosed on 625 LACOINA BLVD, LOS ANGELES, CA 90044 based on Plaintiffs' alleged non-payment which they knew to be false.

44.     The Foreclosing Defendants had actual knowledge that the Plaintiffs' account was not accurate but that the Foreclosing Defendants could use the inaccuracy to foreclose on 625

-19-

LACOINA BLVD, LOS ANGELES, CA 90044   which had substantial equity, to recover its excessive fees, charges and interest.  Plaintiffs made such payments and provided proof of the payments based on the improper, inaccurate, and fraudulent representations as to their account. The Foreclosing Defendants also utilized amounts known to the Defendants to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

45.     Additionally, the Foreclosing Defendants concealed material facts known to them but not to Plaintiffs regarding payments, notices, assignments, transfers, late fees and charges with the intent to defraud Plaintiffs.

46.     The Foreclosing Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiffs' reliance, which the unsuspecting Plaintiffs justifiably relied upon, resulting in damage to their credit standing, costs and loss of their property.  Plaintiffs were unaware of the true facts. Had Plaintiffs known the true facts, Plaintiffs, among other things, would not have maintained the Foreclosing Defendants as their lender, servicer and trustee (and their alleged agents) and/or would have taken legal action immediately to save their house.

47.     As a result of the Foreclosing Defendants' fraudulent conduct, Plaintiffs have suffered compensatory, general and special damages in an amount to proof.  Additionally, the Foreclosing Defendants acted with malice, fraud and or oppression and, thus, Plaintiffs are entitled to an award of punitive damages.

## THIRTHTENNTH CAUSE OF ACTION

### TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE
### (AGAINST THE FORECLOSING DEFENDANTS)

48. Although the trustee's deed upon sale appears valid on its face, it is invalid, and of no force and effect, for the reasons set forth above including, inter alia, the fact the Deed of Trust which purportedly secured the Note, which served as the basis for a claim to have the right to conduct a non-judicial foreclosure was at all times void due to the wrongful and improper assignment to the Foreclosing Defendants.

49.    Plaintiffs are therefore entitled to an order that the Trustee's Deed upon Sale is void ab initio and cancelling such Trustee's Deed.

### FOUTHTEENTH CAUSE OF ACTION FOR
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (AGAINST THE FORECLOSING DEFENDANTS)

50. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

51.    Alternatively, if the note and deed of trust was validly and properly assigned to the Foreclosing Defendants, the Foreclosing Defendants did not act in good faith and did not deal fairly with Plaintiffs in connection with the note and deed of trust when they refused to properly

-21-

apply the payments to their loan and thereafter foreclosed on 625 LACOINA BLVD. LOS ANGELES, CA 90044 even though Plaintiffs provided proof of payments for the allegedly skipped months and thereafter refused to resolve the mistake with Plaintiffs in an equitable fashion.

52.     The Foreclosing Defendants enjoyed substantial discretionary power affecting the rights of Plaintiff during the events alleged in this Complaint.  They were required to exercise such power in good faith.

53.     The Foreclosing Defendants engaged in such conduct to drive Plaintiffs into foreclosure so that they could acquire the 625 LACOINA BLVD. LOS ANGELES, CA 90044 with its large equity at a bargain basement price.  These actions were a bad faith breach of the contract between Plaintiffs and the Foreclosing Defendants which show that they had no intention of performing the contract, consisting of the original note and deed of trust, in good faith.

54      As a result of the Foreclosing Defendants' breaches of this covenant, Plaintiffs have suffered general and special damages in an amount to be determined at trial.

### FIFTEENTH CAUSE OF ACTION FOR
### UNJUST ENRICHMENT
### (AGAINST THE FORECLOSING DEFENDANTS)

55.     By their wrongful acts and omissions, the Foreclosing Defendants have been unjustly enriched at the expense of Plaintiffs, and thus Plaintiffs have been unjustly deprived.

PLAINTIFF, J CLARK'S THIRD AMENDED COMPLAINT AGAINST RELA GAIL FARRIS-ELLISON, LENDERS ESCROW, INC., JUST HEALEZ FINANCIAL FOR QUIET TITLE, EQUITABLE ESTOPPEL, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR SLANDER OF TITLE, AND FOR MONETARY DAMAGES

56.     By reason of the foregoing, Plaintiffs seek restitution from the Foreclosing Defendants, and an order of this Court disgorging all profits, benefits, and other compensation obtained by the Foreclosing Defendants from their wrongful conduct.

## SIXTEENTH CAUSE OF ACTION FOR
## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.
## (AGAINST THE FORECLOSING DEFENDANTS)

57.     *California Business & Professions Code Section 17200, et seq.,* prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

58.     As more fully described above, the Foreclosing Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

59.     Specifically, the Foreclosing Defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by

(a)  Assessing improper or excessive late fees;

(b)  Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees;

-23-

(c)  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(d)  Misapplying or failing to apply customer payments;

(e)  Failing to provide adequate monthly statement information to customers regarding the status of their accounts, payments owed, and or basis for fees assessed;

(f)  Seeking to collect, and collecting, various improper fees, costs and charges, that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;

(g)  Mishandling borrowers' mortgage payments and failing to timely or properly credit payments received, resulting in late charges, delinquencies or default;

(h)  Treating borrowers as in default on their loans even though the borrowers have tendered timely and sufficient payments or have otherwise complied with mortgage requirements or California law;

(i)  Failing to disclose the fees, costs and charges allowable under the mortgage contract;

(j)  Ignoring grace periods;

(k)  Executing and recording false and misleading documents; and

(l)  Acting as beneficiaries and trustees without the legal authority to do so.

60.    The Foreclosing Defendants fail to act in good faith as they take fees for services but do not render them competently and in compliance with applicable law.

-24-

61.     Moreover, the Foreclosing Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the assessment of unwarranted and unfair fees against California consumers, and premature default often resulting in unfair and illegal foreclosure proceedings.  The scheme implemented by the Foreclosing Defendants is designed to defraud California consumers and enrich the Foreclosing Defendants.

62.     The foregoing acts and practices have caused substantial harm to California consumers.

63.     As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of the Foreclosing Defendants, Plaintiffs and California consumers have suffered and will continue to suffer damages in the form of unfair and unwarranted late fees and other improper fees and charges.

64.     By reason of the foregoing, the Foreclosing Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to *California Business & Professions Code Sections 17203 and 17204.*  Additionally, Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under *California Business and Professions Code Sec. 17200* and related sections.

## DISCLAIMER

65.     "To All Persons, Entities, Corporations etc. Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint

Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title Thereto ARE INFORM THAT IF YOU DESIRE TO FILE A CLAIM TO DO SO IN A TIMELY MANNER "

## **PRAYER FOR RELIEF**

**WHEREFORE,** PLAINTIFF prays for JUDGMENT against each and every member, agent, employee, manager, or director, and DOES of the above-listed DEFENDANTS as follows:

1.        That this court shall issue a judgment declaring that Plaintiff is the owner in fee simple and that the court issue a judgment that  Plaintiff is the fee simple owner of all rights, title, and interest in and to the described real property, and to prevent Plaintiff from  suffering and continuing to suffer great and irreparable injury: That this Court issue a judgment declaring that Plaintiff is  the owners in fee simple of the Property, and that the Defendants and Does have no interest in the Property adverse to Plaintiffs:

2.        For a preliminary injunction and a permanent injunction against the Defendants and Does, and each of them, preventing the Defendant's  from asserting, orally and or in writing, to Plaintiffs, third parties and or the social media, that the Defendants and Does  are the owners of the Property, that the Farris/Clark escrow was a fraudulent escrow.

3.        For judgment that the Defendants do not have any right, title or interest in or any lien in the described real property. That the Court issue a judgment that Plaintiffs are the owners in fee simple to the Property, and that, and the doctrine of judicial estoppel applies against any and all Defendant's and Does, from asserting in any legal proceeding against Plaintiffs that they are the owners of the Property:

4.        That this court declare and enter an order and judgment that the Deed of Trust is null and void *ab initio* and never transferred and does not transfer Plaintiff's rights and an order of **cancellation of the deed of trust (DOT) and note**, and that the Defendant's record a grant deed granting the premises to **PLAINTIFF, JAMES LEE CLARK, within five (5) days of the**

**entry of this judgment and that said Grant deed shall forthwith be executed in accordance with the judgment and that Defendants be ordered to deliver the purported Grant Deed, and Deeds of Trust immediatley to the Clerk of the Court for cancellation and for general damages in the sum of $1,000,000 dollars**

5. For an injunction and all injunctive relief against all Defendants from foreclosing or attempting to foreclose on my property, including consequential and compensatory damages in the sum of $2,000,000 and for special damages in the sum of $2,000,000 to be proven at trial and judgment entered and for punitive damages in the sum of $2,000,000 suffered or incurred by Plaintiff and for any and all fees, motions, pleadings, telecommunications, emails, correspondence and faxes and other costs of prosecuting this case and interest of this suit herein incurred and for emotional harm and physical threats they caused me.

6. For declaratory relief against all defendants, declaring that Plaintiff is the sole and legal owner of said property against any and all claims asserted against Plaintiff's property, because Flagstar Bank gave up its claim years ago.

7. For any and all relief as the court deems proper and just.

Date:  4-30-19                              J.CLARK.

J. Clark, Plaintiff, In Pro Per

## VERIFICATION

I, the undersigned, say:

I represent the Plaintiff in this matter. The contents of the Complaint are true of my personal knowledge, except as to matters which are stated on my information and belief and, as to these matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on ___ 11- 30 - 19 ___, 2019 California.

J. Clark,
Plaintiff, *In Pro Per*

EXHIBIT A

V3 WBCD LOAN # 502197213
MIN: 100052550219721379

# NOTE

OCTOBER 13, 2008         Los Angeles,         CALIFORNIA
[Date]         [City]         [State]

625 LACONIA BLVD, LOS ANGELES, CA 90044-3859
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.   $300,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on  DECEMBER 1, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    NOVEMBER 1, 2038,    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
5151 CORPORATE DR
TROY, MI  48098-2639

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S.   $1,896.20.

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

Initials: _JC_

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
© 1999-2007 Online Documents, Inc.      **Page 1 of 3**      F8200NOT 0701
10-13-2008 16:02

This is a Certified Copy

V3 WBCD LOAN # 502197213

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000%     of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials: _____

This is a Certified Copy

V3 WBCD LOAN # 502197213

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
JAMES CLARK

[Sign Original Only]

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999-2007 Online Documents, Inc.                     Page 3   of 3                        F3200NOT  0701
                                                                                          10-13-2008 16:02

This is a Certified Copy

EXHIBIT A



5151 Corporate Drive
Troy, Michigan  48098-2639
Phone: (248) 312-2000
www.flagstar.com

August 27, 2009

Mr. James Clark
625 Laconia Blvd.
Los Angeles, CA  90044

**Re:    Your Mortgage Loan with Flagstar Bank, Loan No.  502197213**

Dear Mr. Clark:

I have received the letter that you faxed to me earlier this week.

As I mentioned in our earlier telephone conversation, we have asked Just That EZ Financial Corporation to provide us with a copy of the documents that you signed.  When we receive those documents, we will contact you.

Sincerely,

Michele K. Spear
Attorney At Law

E x A

EXHIBIT C



5151 Corporate Drive
Troy, Michigan 48098-2639
Phone: (248) 312-2000

September 10, 2009


Mr. James Clark
625 Laconia Blvd
Los Angeles, CA 90044


Dear Mr. Clark:

As we have discussed previously, in an effort to assist you in resolving your issue with Just Thor EZ Financial Corporation, we asked the Company to provide us with a copy of the ... that ... signed ... EZ Financial to hold and distribute some of the proceeds of your mortgage loan upon your request. EZ Financial has not provided the documents and, at this point, it does not appear that the company intends to do so.

When we spoke, I did explain to you that Flagstar Bank does not have the funds that you believe are owed to you. Once your loan was scheduled to close, we wire transferred the full amount of your mortgage loan to Lenders Title, who had responsibility to disburse the funds ... that Lenders Title utilized EZ Financial as its settlement agent.

At this point, there is nothing further that we can do. We attempted to intervene with EZ Financial in order to assist you but, as I've explained, the company has not cooperated with us. You should consult with an attorney to discuss the options that you may have against EZ Financial and /or Lenders Title.


Sincerely,

Michele K Spear

Michele K Spear

EXHIBIT D

4/30/2019                    Certified copy of Judgement against P... 9r00K.jpg

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 09/08/16 | | |
| HONORABLE Ross Klein | JUDGE | B. VIOLA |
| | | R. HICKMAN, C.A. |
| HONORABLE | JUDGE PRO TEM | |
| NONE | Deputy Sheriff | NONE |

DEPT. SOS27

DEPUTY CLERK

ELECTRONIC RECORDING MONITOR

Reporter

| | |
|---|---|
| 2:30 pm TC023636 | |
| JAMES LEE CLARK | Plaintiff Counsel |
| VS | NO APPEARANCES |
| RITA FARRIS ELLISON, ET AL | Defendant |
| 170.6 CCP - JUDGE BARRY (COMPTO | Counsel |
| 6 VOL -1 BOX, TO BASEMENT | |
| CLERK'S OFFICE FOR REQ | |

NATURE OF PROCEEDINGS:

RULING ON SUBMITTED MATTER

The Court modifies, nunc pro tunc, the I
2013 ruling by adding the following:

The Fifth Amended Complaint is the operative
complaint. Judgment in favor of Plaintiff James Lee
Clark against Defendant Rita Farris Ellison was
based on the Court's finding that Plaintiff met
his legal burden in proving that the Defendant
breached her fiduciary duty to Plaintiff.

Plaintiff is to give notice.

CLERK'S CERTIFICATE OF MAILING

I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the
minute order
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the courthouse in Long Beach,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,

Page   1 of   2   DEPT. SOS27

MINUTES ENTERED
09/08/16
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

NATURE OF PROCEEDINGS:

THE DOCUMENT TO WHICH THIS CERTIFICATE IS
ATTACHED IS A FULL, TRUE, AND CORRECT COPY
OF THE ORIGINAL ON FILE AND OF RECORD IN
MY OFFICE.

ATTEST                    JUL 2 0 2017

SHERRI R. CARTER
Executive Officer/Clerk of the Superior
Court of California, County of Los Angeles.

BY
ALBERT PALOMERA
DEPUTY



# EXHIBIT C

EXHIBIT E

# FILED

OCT 19 2012

DEPARTMENT OF REAL ESTATE
BY: _____

BEFORE THE DEPARTMENT OF REAL ESTATE

STATE OF CALIFORNIA

\* \* \* \*

In the Matter of the Accusation of     )     No. H-37565 LA
JUST THAT EZ FINANCIAL                 )
CORPORATION and RITA GAYLE ELLISON,    )
                                       )
                         Respondents.  )
_____)

## ORDER DENYING RECONSIDERATION

On August 24, 2012, a Decision was rendered in the above-entitled matter.  The Decision was to become effective on September 19, 2012, but was stayed by separate Order to October 19, 2012.

On October 17, 2012, Respondents petitioned for reconsideration of the Decision of August 24, 2012.

I have given due consideration to the petition of Respondents.  I find no good cause to reconsider the Decision of August 24, 2012, and reconsideration is hereby denied.

IT IS SO ORDERED 10/18/2012

Real Estate Commissioner

**FILED**

SEP 19 2012

DEPARTMENT OF REAL ESTATE
BY:

BEFORE THE DEPARTMENT OF REAL ESTATE

STATE OF CALIFORNIA

\* \* \* \*

| In the Matter of the Accusation of | ) | NO. H-37565 LA |
|---|---|---|
| | ) | I-2011120952 |
| RITA GAYLE FARRIS-ELLISON, | ) | |
| | ) | |
| Respondent(s). | ) | |

ORDER STAYING EFFECTIVE DATE

On August 24, 2012, a Decision was rendered in the above-entitled matter to become effective September 19, 2012.

IT IS HEREBY ORDERED that the effective date of the Decision of August 24, 2012, is stayed for a period of thirty (30) days to allow Respondent RITA GAYLE FARRIS-ELLISON to file a petition for reconsideration.

The Decision of August 24, 2012, shall become effective at 12 o'clock noon on October 19, 2012.

DATED: *SEPTEMBER 19, 2012*

Real Estate Commissioner

By: 

PHILLIP IHDE
Regional Manager

**FILED**

AUG 29 2012

DEPARTMENT OF REAL ESTATE
BY: ~signature~

DEPARTMENT OF REAL ESTATE

STATE OF CALIFORNIA

\* \* \* \* \*

In the Matter of the Accusation of    )    No. H-37565 LA
                                       )
JUST THAT EZ FINANCIAL CORPORATION;    )    L-2011120952
and RITA FARRIS-ELLISON,               )
individually and as designated         )
officer of Just That EZ Financial      )
Corporation,                           )
                      Respondent(s).   )
_____ )

## DECISION

The Proposed Decision dated July 24, 2012,

of the Administrative Law Judge of the Office of

Administrative Hearings, is hereby adopted as the Decision

of the Real Estate Commissioner in the above-entitled

matter.

This Decision shall become effective at

SEP 1 9 2012

12 o'clock noon on _____.

IT IS SO ORDERED  8/24/2012 .

                                    Real Estate Commissioner

                                    By WAYNE S. BELL
                                       Chief Counsel

BEFORE THE
DEPARTMENT OF REAL ESTATE
STATE OF CALIFORNIA

In the Matter of the Accusation Against:

JUST THAT EZ FINANCIAL
CORPORATION; and RITA FARRIS-
ELLISON, individually and as designated
officer of Just That EZ Financial
Corporation,

Respondent.

Case No. H-37565 LA

OAH No. 2011120952

## PROPOSED DECISION

Samuel D. Reyes, Administrative Law Judge, Office of Administrative Hearings, heard this matter on June 25, 2012, in Los Angeles, California.

James R. Peel, Counsel, represented complainant Robin Trujillo.

Nana Serwaah Gyamfi, Attorney at Law, represented Just that EZ Financial Corporation (Respondent EZ Financial) and Rita Gayle Farris Ellison (Respondent), collectively referred to as Respondents.

Complainant seeks to discipline Respondents' real estate broker licenses based on Respondents' alleged failure to maintain escrow accounts as required by law, to sign disclosure forms as required by law, to maintain client funds separate from Respondents' funds, for their alleged use of an unauthorized escrow agent fictitious name, and for their alleged forfeiture of corporate powers, rights, and privileges. Respondent disputed some of the allegations and presented evidence in support of continued licensure.

Oral and documentary evidence was presented at the hearing, and the matter was submitted for decision.

## FACTUAL FINDINGS

1.      Complainant filed the Accusation in her official capacity as a Deputy Real Estate Commissioner of the State of California.

2.      Respondent EZ Financial, a Nevada corporation, held real estate broker license number 01238577 until its expiration on February 18, 2011. Respondent served as its designated officer.  On October 1, 2010, the State of California Franchise Tax Board forfeited the corporation's powers, rights and privileges pursuant to the provisions of California Revenue and Taxation Code.

3.      On October 5, 1993, the Department issued broker license number 01168622 to Respondent, which license expires October 4, 2013, unless renewed. The license has not been previously disciplined.

4       On July 28, 2011, the Department completed an audit of Respondent EZ Financial's real estate operations for the period of March 1, 2008, through February 28, 2011.

5.      Review of Respondents' records during the audit revealed that Respondents or their agents had not signed some mortgage disclosure forms, and that the license name and number of the broker or its agents was not listed in some of the disclosure forms, found in three loan files, those of James Clark (Clark), discussed below, Linda N. Nesbit, and Josella Mc Firstley.

6.      At all times material, Respondents acted in the capacity of a real estate broker.

7.      On October 21, 2008, in expectation of compensation, Respondents negotiated a refinance loan on property owned by Clark at 625 Laconia Boulevard, Los Angeles, California. The lender was Flagstar Bank, and the loan amount was $300,000.

8.      Respondents operated broker escrow services under the name of Lenders Escrow, Inc., a business which had not been licensed by the Department to conduct escrow activities.

9.      Lenders Escrow, Inc. acted as the escrow agent in the Clark transaction. Escrow closed on the refinance transaction on October 21, 2008.  On October 21, 2008, Investor's Title Company forwarded proceeds of $58,549.07 to Lenders Escrow, Inc., $49,213.07 of which were due to Clark.

10.     The entire $58,549.07 was deposited into Respondents' general account. Checks were thereafter drawn on the general account to pay sums owed in connection with the transaction as well as sums not related to the transaction.

11.     Respondents did not maintain a separate trust account.  Nor did they maintain records with the information required by California Code of Regulations (CCR), title 10, sections 2831 and 2831.2 in columnar form or otherwise.

12.    A Lenders Escrow, Inc. ledger shows that the difference between the $58,549.07 check from the title insurance company and the $49,213.07 due to Clark, or $9,336, was allocated as follows: $8,001 to Respondent EZ Financial; $1,200 to Lenders Escrow, Inc; $50 to notary Warren Leon Johnson; and $85 to insurance agent Morris Davis Jr.

13.    Lenders Escrow, Inc. Escrow Officer Genevieve Adolphus wrote a check for $49,213.07, payable to Clark, and prepared a cover letter informing Clark about the check. The letter also referred to the HUD Settlement Form, which document explained how the loan proceeds were applied.

14.    The testimony is in conflict regarding what happened to the $49,213.07. Clark denied that he had received the settlement statement or the money. In a letter dated August 25, 2009, Clark complained to the lender, Flagstar Bank, that he had not received any money from the cash-out refinance. Clark has filed a civil lawsuit against Respondents to recover the money he alleges never to have received.

15.    a.    Respondent testified that Clark loaned her the money. She testified that she had known Clark for approximately 20 years and that they were friends and had engaged in business activity in the past. Clark held a building contractor's license, and had worked for her in such capacity. Clark had also utilized Respondent's real estate services to purchase homes that he refurbished for resale. Respondent testified that when she presented him with the check for $49,213.07, Clark told her that he did not need the money at that time. He noted that business was slow for Respondent, and that she could use the money. Clark asked Respondent to make periodic disbursements to him or on his behalf to others he designated. Respondent believed she had obtained a loan, and intended to repay the loan.

b.    There is no writing evidencing a loan from Clark to Respondent, or setting forth any terms under which Respondent could use any of the $49,213.07 owed to Clark.

c.    Respondent estimated that she paid $28,407.47 to Clark or to others as directed by Clark, including family members and contractors. Respondent provided copies of checks in support of her testimony. Clark denied receiving the checks at issue, except for one, which he stated constituted payment for work performed on one of Respondent's homes.

d.    Respondent estimated that she actually used approximately $22,437.60 of the money loaned to her by Clark.

16.    Respondent testified that at a later time, "out of the blue," Clark demanded all of his money. She told him that she did not have it, but that she would repay him in installments. Clark refused her offer. Respondent asserts that she is willing to repay the loan, but has not made any payments.

Case 2:19-cv-08551-DDP-PLA   Document 1   Filed 10/03/19   Page 49 of 134   Page ID #:49

17.    Respondent's daughter, Tamera Farris (Farris), who worked at Respondent's business from 1998 until November 2011, corroborated Respondent's testimony regarding Clark's loan. Farris testified that she has known Clark since she was a little girl and that he was a friend of her mother. She heard him say that he understood his mother was having a difficult time with the business and that he did not need all the money at that time. He wanted to have access to the money as he needed it, and that he would come by to collect checks. Clark visited the office at least once per week, and Farris saw him pick up checks on subsequent visits.

18.    Respondent's sister in law, Odelle Farris, testified that she was a beneficiary of Clark's good will. At her request, Clark lent her $1,800 to deal with some financial difficulties. Odelle Farris testified that Clark told her that he would call Respondent to ask her to write a check. He apparently did, as Respondent presented her with a check for $1,800. Odelle Farris testified that Clark did not specify the terms under which he was lending her the money. She repaid the debt by having some of her construction workers perform work on one of Clark's properties.

19.    While Respondent's testimony that she received a loan from Clark is subject to doubt, she did have a social and professional relationship with Clark that spanned 20 years and such a loan could have been possible. In addition, her testimony was corroborated by contemporaneous checks and by the testimonies of Farris and Odelle Farris and cannot be dismissed. On the other hand, the existence of a loan was directly and adamantly denied by Clark, and he has taken actions consistent with his assertions, namely filing a lawsuit to collect money allegedly misappropriated, which lends credibility to his testimony. However, Clark was not a fully credible witness on the stand, as he was evasive and non-responsive at times, and did not contradict the testimony about his relationship with Respondent. In sum, neither witness was fully credible, and as a result, Respondent did not establish that she received a loan, but the Department did not establish that she engaged in fraudulent conduct toward Clark.

## LEGAL CONCLUSIONS

1.    Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code sections 10177, subdivision (d), 10240, and CCR, title 10, section 2840, in that Respondents failed to sign required disclosure forms and failed to include a broker's name and license number in required disclosure forms, by reason of factual finding numbers 4 through 6.

2.    Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code sections 10177, subdivision (d), 10159.5, and CCR, title 10, section 2731, in that Respondents conducted business under a fictitious name that had not been approved by the Department, by reason of factual finding numbers 2, 3, and 6 through 9.

3.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code sections 10177, subdivision (d), 10145, subdivision (a), and CCR, title 10, section 2832, in that Respondents failed to deposit Clark's funds in a trust account, by reason of factual finding numbers 6 through 13.

4.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10177, subdivision (d), in that Respondents failed to maintain a trust account in accordance with the requirements of CCR, title 10, sections 2831 and 2831.2, by reason of factual finding numbers 6 through 13.

5.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10176, subdivision (e), in that Respondents commingled Clark's funds with their funds, by reason of factual finding numbers 6 through 10.

6.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10177, subdivision (g), in that Respondents demonstrated incompetence in handling the Clark transaction, by reason of factual finding numbers 6 through 11.

7.     Grounds do not exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10176, subdivision (i), in that it was not established that Respondents engaged in fraud or dishonest dealing in the Clark transaction, by reason of factual finding numbers 6 through 19.

8.     Grounds do not exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10177, subdivision (d), and CCR, title 10, section 2742, in that it was not established that Respondent EZ Financial's corporate powers and privileges had been forfeited at the time of the Clark transaction, by reason of factual finding numbers 2 through 13.

9.     All evidence presented in mitigation or rehabilitation has been considered. Respondents' misconduct is serious, recent, and injured a consumer of their services. Accordingly, significant discipline is required for the protection of the public. On the other hand, Respondent had a long-term relationship with Clark and believed she had obtained a loan, and it was not established that Respondent engaged in any fraudulent conduct. She has no other discipline. The order that follows is therefore required and sufficient for the protection of the public. Under the order, Respondent will only be able to obtain a salesperson's license, will be under the direct supervision of a broker, and will not be responsible for trust funds.

ORDER

A.     All licenses and licensing rights of Respondent EZ Financial Corporation under the Real Estate Law are revoked.

5

B.      All licenses and licensing rights of Respondent Rita Gayle Farris Ellison under the Real Estate Law are revoked; provided, however, a restricted real estate salesperson license shall be issued to Respondent pursuant to Section 10156.5 of the Business and Professions Code if Respondent makes application therefore and pays to the Department of Real Estate the appropriate fee for the restricted license within 90 days from the effective date of this Decision. The restricted license issued to Respondent shall be subject to all of the provisions of Section 10156.7 of the Business and Professions Code and to the following limitations, conditions and restrictions imposed under authority of Section 10156.6 of that Code:

1.      The restricted license issued to Respondent may be suspended prior to hearing by Order of the Real Estate Commissioner in the event of Respondent's conviction or plea of nolo contendere to a crime which is substantially related to Respondent's fitness or capacity as a real estate licensee.

2.      The restricted license issued to Respondent may be suspended prior to hearing by Order of the Real Estate Commissioner on evidence satisfactory to the Commissioner that Respondent has violated provisions of the California Real Estate Law, the Subdivided Lands Law, Regulations of the Real Estate Commissioner or conditions attaching to the restricted license.

3.      Respondent shall not be eligible to apply for the issuance of an unrestricted real estate license nor for the removal of any of the conditions, limitations or restrictions of a restricted license until four years have elapsed from the effective date of this Decision.

4.      Respondent shall submit with any application for license under an employing broker, or any application for transfer to a new employing broker, a statement signed by the prospective employing real estate broker on a form approved by the Department of Real Estate which shall certify:

(a)    That the employing broker has read the Decision of the Commissioner which granted the right to a restricted license; and

(b)    That the employing broker will exercise close supervision over the performance by the restricted licensee relating to activities for which a real estate license is required.

5.      Respondent shall, within nine months from the effective date of this Decision, present evidence satisfactory to the Real Estate Commissioner that Respondent has, since the most recent issuance of an original or renewal real estate license, taken and successfully completed the continuing education requirements of Article 2.5 of Chapter 3 of the Real Estate Law for renewal of a real estate license. If Respondent fails to satisfy this condition,

the Commissioner may order the suspension of the restricted license until the Respondent presents such evidence. The Commissioner shall afford Respondent the opportunity for a hearing pursuant to the Administrative Procedure Act to present such evidence.

6.      Respondent shall, within six months from the effective date of this Decision, take and pass the Professional Responsibility Examination administered by the Department including the payment of the appropriate examination fee. If Respondent fails to satisfy this condition, the Commissioner may order suspension of Respondent's license until Respondent passes the examination.

7.      Should a court of competent jurisdiction impose a restitution obligation, such obligation shall be incorporated as a term and condition of any restricted license issued to Respondent.

DATED:    7/24/12

SAMUEL D. REYES
Administrative Law Judge
Office of Administrative Hearings

7



1  JAMES R. PEEL, Counsel (SBN 47055)
   Department of Real Estate
2  320 West Fourth Street, Ste. 350
   Los Angeles, California 90013-1105
3
   Telephone:  (213) 576-6982
4      -or-    (213) 576-6913 (Direct)
5
6
7
8              DEPARTMENT OF REAL ESTATE
9                STATE OF CALIFORNIA
10                    * * *
11 In the Matter of the Accusation of  )    No. H-37565 LA
                                        )
12    JUST THAT EZ FINANCIAL            )    A C C U S A T I O N
      CORPORATION; and                 )
15    RITA GAYLE FARRIS ELLISON,        )
      individually and as              )
14    designated officer of            )
      Just That EZ Financial           )
15    Corporation,                     )
                                        )
16            Respondents.              )
17 -------------------------------------)
18         The Complainant, Robin Trujillo, a Deputy Real Estate
19 Commissioner of the State of California, for cause of accusation
20 against JUST THAT EZ FINANCIAL CORPORATION; and RITA GAYLE
21 FARRIS ELLISON, individually and as designated officer of Just
22 That EZ Financial Corporation, alleges as follows:
23 ///
24 ///
25 ///
26 ///
27 ///

                        - 1 -

1       1.  The Complainant, Robin Trujillo, acting in her

2   official capacity as a Deputy Real Estate Commissioner of the

3   State of California, makes this Accusation against JUST THAT EZ

4   FINANCIAL CORPORATION and RITA GAYLE FARRIS ELLISON.

5       2.  JUST THAT EZ FINANCIAL CORPORATION and RITA GAYLE

6   FARRIS ELLISON individually and as designated officer of said

7   corporation (hereinafter referred to as "Respondents") are

8   presently licensed and/or have license rights under the Real

9   Estate Law (Part 1 of Division 4 of the Business and Professions

10  Code, hereinafter Code).

11      3.  At all times herein mentioned, Respondents JUST

12  THAT EZ FINANCIAL CORPORATION and RITA GAYLE FARRIS ELLISON were

13  licensed as a real estate broker.  Respondent RITA GAYLE FARRIS

14  ELLISON was the designated broker officer and pursuant of Code

15  Section 10159.2 was responsible for the supervision and control

16  of the activities conducted on behalf of the corporation by its

17  officers and employees as necessary to secure full compliance

18  with the provisions of the real estate law including supervision

19  of salespersons licensed to the corporation in the performance of

20  acts for which a real estate license is required.

21      4.  At all times material herein, Respondents engaged

22  in the business of, acted in the capacity of, advertised or

23  assumed to act as a real estate broker in the State of California

24  within the meaning of Sections 10131(a) and (d) of the Code

25  including soliciting buyers and sellers, negotiating the sale of

26  real property, and negotiating loans on real property.

27

1        5.  On or about July 28, 2011, the Department completed

2    an examination of Respondent JUST THAT EZ FINANCIAL CORPORATION's

3    books and records, pertaining to the activities described in

4    Paragraph 4 above, covering a period from March 1, 2008, through

5    February 28, 2011, which examination revealed violations of the

6    Code and of Title 10, Chapter 6, California Code of Regulations

7    (hereinafter Regulations) as set forth below.

8        6.  The examination described in Paragraph 5, above,

9    determined that, in connection with the activities described in

10   Paragraph 4 above, Respondent JUST THAT EZ FINANCIAL CORPORATION

11   accepted or received funds, including funds in trust (hereinafter

12   "trust funds") from or on behalf of principals, and thereafter

13   made deposit or disbursement of such funds.

14       7.  In the course of activities described in Paragraphs

15   4 through 6 and during the examination period described in

16   Paragraph 5, Respondents JUST THAT EZ FINANCIAL CORPORATION and

17   RITA GAYLE FARRIS ELLISON acted in violation of the Code and the

18   Regulations as follows, and as more specifically set forth in

19   Audit Report No. LA 100258 and related exhibits.

20       8.  In or about October 21, 2008 Respondents in

21   expectation of compensation negotiated a re-finance loan on

22   property located at 625 Laconia Blvd., Los Angeles, California

23   for the owner James Clark.

24       9.  Respondent performed broker escrow services under

25   the unlicensed name Lender Escrow, Inc.

26

27

10.   During the course of the escrow Investors Title Company forwarded to Respondents loan proceeds belonging to the owner amounting to $58,549.

11.   Respondents violated Code Section 10145(a) and Regulation 2832, Title 10, Chapter 6, California Code of Regulations by not depositing the funds received from Investors Title into a real estate broker trust account.

12.   Respondents misappropriated all or substantially all of the funds received from Investors Title to their own use and benefit without the knowledge and permission of the owner.

13.   Respondents failed to maintain the trust account records required by Regulations 2831 and 2831.2.

14.   Respondents violated Code Section 10240 and Regulation 2840 in that Mortgage Loan Disclosure Statements were not signed by the broker or agent negotiating the loan, and the license name and license number of the broker or agent were not provided to the borrowers on the MLDS.

15.   Respondents violated Code Section 10176(e) by commingling the owner's funds with funds belonging to Respondents.

16.   Respondents violated Code Section 10159.5 and Regulation 2731 by using the unlicensed fictitious business name Lenders Escrow, Inc. in their brokerage operation.

17.   Respondents violated Regulation 2742 in that the California Franchise Tax Board forfeited Respondent corporation's powers, rights and privileges on October 1, 2010 and said powers remain forfeited.

18.  The conduct, acts and/or omissions of Respondents JUST THAT EZ FINANCIAL CORPORATION and RITA GAYLE FARRIS ELLISON, as alleged above, subjects their real estate licenses and license rights to suspension or revocation pursuant to Sections 10176(a), 10176(e), 10176(i), 10177(d), and/or 10177(g) of the Code.

19. The conduct, acts and/or omissions of Respondent RITA GAYLE FARRIS ELLISON in failing to ensure full compliance with the Real Estate Law is in violation of Code Section 10159.2 and subjects her real estate licenses and license rights to suspension or revocation pursuant to Sections 10177(d), 10177(g), and/or 10177(h) of the Code.

WHEREFORE, Complainant prays that a hearing be conducted on the allegations of this Accusation and that upon proof thereof, a decision be rendered imposing disciplinary action against all licenses and license rights of Respondents JUST THAT EZ FINANCIAL CORPORATION and RITA GAYLE FARRIS ELLISON individually and as designated officer of Just That EZ Financial Corporation under the Real Estate Law (Part 1 of Division 4 of the Business and Professions Code) and for such other and further relief as may be proper under other applicable provisions of law.

Dated at Los Angeles, California this 8 day of September , 2011.

ROBIN TRUJILLO
Deputy Real Estate Commissioner

- 5 -

```
 1
 2
 3
 4
 5
 6
 7    cc:    Just That EZ Financial Corporation
             Rita Gayle Farris Ellison
 8           Robin L. Trujillo
             Sacto.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
```

6

# FILED

### OCT 24 2013

### BUREAU OF REAL ESTATE

By _____

BEFORE THE BUREAU OF REAL ESTATE

STATE OF CALIFORNIA

* * *

In the Matter of the Accusation of    )        No. H-37565 LA
                                      )
    RITA GAYLE FARRIS-ELLISON         )
                                      )
                Respondent.           )
_____)

ORDER SUSPENDING RESTRICTED REAL ESTATE LICENSE

To:   RITA GAYLE FARRIS-ELLISON
      36433 Winter Cherry Road
      Winchester, CA 92596

On August 24, 2012, the Real Estate Commissioner adopted the Proposed Decision of July 24, 2012 as his Decision in Bureau Case No. H-37565 LA.  On October 18, 2012, the Real Estate Commissioner issued an Order Denying Reconsideration. The Decision granted a restricted real estate salesperson license subject to terms, conditions, and restrictions, including but not limited to the following:

6. Respondent shall, within six months from the effective date of this Decision, take and pass the Professional Responsibility Examination administered by the [Bureau] including the payment of the appropriate examination fee.  If Respondent fails to

- 1 -

satisfy this condition, the Commissioner may order
suspension of Respondent's license until Respondent
passes the examination.

The Decision became effective on October 19, 2012.
However, as of September 3, 2013, Respondent has failed to take
and pass the Professional Responsibility Examination.

NOW, THEREFORE, IT IS ORDERED that Respondent's
restricted real estate salesperson license and the exercise of
any privileges thereunder are hereby suspended until Respondent
enters into an agreement satisfactory to the Commissioner or a
decision providing otherwise is adopted following a hearing.

IT IS FURTHER ORDERED that all license certificates
and identification cards issued by the Bureau of Real Estate
which are in the possession of Respondent be immediately
surrendered by personal delivery or by mailing in the enclosed
self-addressed envelope to:

> BUREAU OF REAL ESTATE
> Attention: Flag Section
> P.O. Box 137013
> Sacramento, CA 95813-7013

HEARING RIGHTS:  You have the right to a hearing to
contest the Commissioner's determination that you are in
violation of the Order issued in this matter.  If you desire a
hearing, you must submit a written request.  The request may be
in any form, as long as it is in writing and indicates that you
want a hearing.  Unless a written request for a hearing, signed
by or on behalf of you, is delivered or mailed to the Bureau of
Real Estate at 320 West 4th Street, Suite 350, Los Angeles, CA
90013-1105, within 20 days after the date that this Order was

- 2 -

1  mailed to or served on you, the Bureau of Real Estate will not

2  be obligated or required to provide you with a hearing.

3         This Order shall be effective immediately.

4  Dated: _____ **OCT 1 5 2013** _____

5

6                    REAL ESTATE COMMISSIONER

7

8                    By: JEFFREY MASON
                         Chief Deputy Commissioner
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

EXHIBIT G



First American Title Insurance Company
National Agency Services
Operations Headquarters
1 First American Way, DFW 4-6, Westlake TX 76262
(817) 699-3753 · (800) 327-1018 · FAX (817) 926-1924

Wednesday, October 15, 2008 1:52:34 PM

Flagstar Bank, FSB, ISAOA
P.O. Box 7006
Troy, MI 48007-7026

Name of Issuing Agent, Approved Attorney or Approved Closing Vendor (hereafter, "Issuing Agent," "Approved Attorney" or "Approved Closing Vendor," as the case may require):

   Investors Title Company
   700 N. Brand Blvd.
   Suite 1100
   Glendale, CA - 91203
   Phone: (818) 476-4000

Transaction (hereafter, "the Real Estate Transaction"):

   Borrower: James Clark
   Property Address: 625 Laconia Blvd., Los Angeles, CA 9004.
   Reference No: 502147313

Re: Order 2110230

Dear Sir or Madame:

First American Title Insurance Company (the "Company") agrees, subject to the Conditions and Exclusions set forth below, to reimburse you for actual loss incurred by you in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent, Approved Attorney or Approved Closing Vendor, provided:

(A) title insurance of the Company is specified for your protection in connection with the closing of the Real Estate Transaction;

(B) you are (a) the (i) lender secured by a mortgage (including any other security instrument) of an interest in land, its assignees or a warehouse lender (ii) purchaser of an interest in land, or (iii) lessee of an interest in land; and

(C) the aggregate of all funds you transmit to the Issuing Agent, Approved Attorney or Approved Closing Vendor for the Real Estate Transaction does not exceed five million dollars $5,000,000.00

and provided the loss arises out of:

   1. Failure of the Issuing Agent, Approved Attorney or Approved Closing Vendor to comply with your written closing instructions to the extent that they relate to (a) the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, including the obtaining of documents and the disbursement of funds necessary to establish the status of title or lien, or (b) the obtaining of any other document, specifically required by you, but only to the extent the failure to obtain the other document affects the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land and not to the extent that your instructions require a determination of the validity, enforceability or effectiveness of the other document, or

   2. Fraud, dishonesty or negligence of the Issuing Agent, Approved Attorney or Approved Closing Vendor in handling your funds or documents in connection with the closing to the extent that fraud, dishonesty or negligence relates to the status of the title to that interest in land or to the validity, enforceability, and priority of the lien of the mortgage on that interest in land

If you are a lender protected under the foregoing paragraph, your borrower, your assignee and your warehouse lender in connection with a loan secured by a mortgage shall be protected as if this letter were addressed to them.

Conditions and Exclusions

1 The Company will not be liable to you for loss arising out of:

   A  Failure of the Issuing Agent, Approved Attorney or Approved Closing Vendor to comply with your

Page 1 of 2

closing instructions which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in the binder or commitment shall not be deemed to be inconsistent.

a. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except as shall result from failure of the Issuing Agent or Approved Attorney or Approved Closing Vendor to comply with your written closing instructions to deposit the funds in a bank which you designated by name.

b. Defects, liens, encumbrances or other matters in connection with the Real Estate Transaction if it is a purchase, lease or loan transaction except to the extent that protection against those Defects, liens, encumbrances or other matters is afforded by a policy of title insurance not inconsistent with your closing instructions.

c. Fraud, dishonesty or negligence of your employee, agent, attorney or broker.

d. Your settlement or release of any claim without the written consent of the Company.

e. Any matters created, suffered, assumed or agreed to by you or known to you.

2. If the closing is conducted by an Approved Attorney or Approved Closing Vendor, a title insurance binder or commitment for the issuance of a policy of title insurance of the Company must have been received by you prior to the transmission of your final closing instructions to the Approved Attorney or Approved Closing Vendor.

3. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of this right of subrogation.

4. The Issuing Agent is the Company's agent only for the limited purpose of issuing title insurance policies. Neither the Issuing Agent, the Approved Attorney nor the Approved Closing Vendor is the Company's Agent for the purpose of providing other closing or settlement services. The Company's liability for your losses arising from those other closing or settlement services is strictly limited to the protection expressly provided in this letter. Any liability of the Company for loss does not include liability for loss resulting from the negligence, fraud or bad faith of any party to a real estate transaction other than an Issuing Agent, Approved Attorney or Approved Closing Vendor; the lack of creditworthiness of any borrower connected with a real estate transaction, or the failure of any collateral to adequately secure a loan connected with a real estate transaction. However, this letter does not affect the Company's liability with respect to its title insurance binders, commitments or policies.

5. Either the Company or you may demand that any claim arising under this letter be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association, unless you have a policy of title insurance for the applicable transaction with an Amount of Insurance greater than $2,000,000. If you have a policy of title insurance for the applicable transaction with an Amount of Insurance greater than $2,000,000 a claim arising under this letter may be submitted to arbitration only when agreed to by both the Company and you.

6. You must promptly send written notice of a claim under this letter to the Company at its principal office at 1 First American Way, Santa Ana, CA 92707, ATTN: Claims Department. The Company is not liable for a loss if the written notice is not received within one year from the date of the closing.

Any previous closing protection letter or similar agreement is hereby cancelled with respect to the Real Estate Transaction.

FIRST AMERICAN TITLE INSURANCE COMPANY

Andree Ranft
Senior Vice President

Digital Signature: XABX8F0IS2737FRI1A46G3S31175C6FDK5A
You Can View This CPL At:
http://letters.closingprotect.com/National/ClosingLetters/2008-10/18/fdc6810518136223765.pdf

10/21/08

|||||||||||||||||||||||||||||||||||||||||||||
## 20081870751

# INVESTORS TITLE COMPANY

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-531-1

110280-JP

Escrow No.: 08-CLARK
V3 WBCD LOAN # 502197213
———————————————————— [Space Above This Line For Recording Data] ————————————————————

## DEED OF TRUST

MIN 100052550219721379

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated OCTOBER 13, 2008, together with all Riders to this document.
(B) "Borrower" is an unmarried man.

JAMES CLARK,

Borrower is the trustor under this Security Instrument.
(C) "Lender" is FLAGSTAR BANK, FSB.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2007 Online Documents, Inc.         Page 1 of 12         CAEDEED         Initials: _____
                                                                  CAEDEDL 0705
                                                                  10-13-2008 16:02

Lender is a FEDERALLY CHARTERED SAVINGS BANK organized and existing under the laws of UNITED STATES OF AMERICA. Lender's address is 5151 CORPORATE DR, TROY, MI 48098-2639.

V3 WBCD LOAN # 502197213

(D) "Trustee" is JOAN H. ANDERSON.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 49501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated OCTOBER 13, 2008.   The Note states that Borrower owes Lender ******************************THREE HUNDRED THOUSAND AND NO/100 ************************************************* Dollars (U.S.   $300,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2038.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider
☐ V.A. Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2007 Online Documents, Inc.                    Page   2   of 12

Initials: ____

CAEDEDL  0705
10-13-2008 16:02

TRANSFER OF RIGHTS IN THE PROPERTY

V3 WBCD LOAN # 502197213

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY [Type of Recording Jurisdiction] of LOS ANGELES

[Name of Recording Jurisdiction]:

~~SEE PRELIMINARY REPORT~~  See Legal Description.

APN #: ~~6117-014-014~~
            6117

which currently has the address of 625 LACONIA BLVD, LOS ANGELES,

[Street] [City]

California   90044-3839    ("Property Address"):
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2007 Online Documents, Inc.                    **Page  3  of 12**

Initials: _____
CAEDEDL  0705
10-13-2008 16:02

**V3 WBCD LOAN # 502197213**

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower

V3 WBCD LOAN # 502197213

any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2007 Online Documents, Inc.                    Page   5   of   12

Initials: ___

CAEDEDL  0705
10-13-2008 16:02

**V3 WBCD LOAN # 502197213**

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect

V3 WBCD LOAN # 502197213

its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

**(b)** Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2007 Online Documents, Inc.

Page 7 of 12

Initials: ____

CAEDEDL  0705

10-13-2008 16:02

V3 WBCD LOAN # 502197213

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can

Initials: ____

CAEDEDL 0705
10-13-2008 16:02

V3 WBCD LOAN # 502197213

agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01

© 1999-2007 Online Documents, Inc.

Page   9   of   12

Initials: _____

CAEDEDL 0705

10-13-2008 16:02

V3 WBCD LOAN # 502197213

all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2007 Online Documents, Inc. Page 10 of 12
Initials: ___
CAEDEDL 0705
10-13-2008 16:02

V3 WBCD LOAN # 502197213

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01

© 1999-2007 Online Documents, Inc.

Page 11 of 12

Initials: _____

CAEDEDL   0705

10-13-2008  16:02

V3 WBCD LOAN # 502197211

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JAMES CLARK

State of CALIFORNIA
County of LOS ANGELES

On October 13, 2008 , before me, Warren Leon Johnson  Notary Public
(here insert name and title of the officer), personally appeared _____
_____James Clark_____
_____

who proved to me on the basis of satisfactory evidence to be  the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or  the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____

WARREN LEON JOHNSON
Commission # 1626198
Notary Public - California
Los Angeles County
My Comm. Expires Dec 2, 2009

(SEAL)

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01
© 1999-2007 Online Documents, Inc.          Page  12 of 12                    CAEDEDL 0705
                                                                   10-13-2008 16:02

14

## DESCRIPTION

THE LAND REFERRED TO IN THIS DESCRIPTION SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, CITY OF LOS ANGELES AND IS DESCRIBED AS FOLLOWS:

LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

6117-014-014

Exhibit



Ellison 000029

James Lee Clark
625 Laconia Blvd.
Los Angeles, CA 90044
IN PROPIA PERSONA



**FILED**
Superior Court Of California
County Of Los Angeles

DEC 3 0 2013

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Lilian Hernandez

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

---

| | |
|---|---|
| JAMES LEE CLARK | **CASE NO.: TC023636** |
| PLAINTIFF, | |
| | **JUDGMENT** |
| RITA FARRIS ELLISON, ET AL. | |
| DEFENDANT(S) | |

---

It is hereby ordered, adjudged and decreed that judgment shall be entered in favor

of Plaintiff against Defendant Rita Farris Ellison in the amount of $100,000.00,

plus costs. Plaintiff's request for punitive damages is denied.

Dated:  December 30, 2013

_____
JUDGE OF THE SUPERIOR COURT

JUDGE ROSS M. KLEIN

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 12/30/13                                                    **DEPT.** S27

HONORABLE ROSS M. KLEIN        JUDGE    L. HERNANDEZ        DEPUTY CLERK
                                        R. HICKMAN, CA

HONORABLE                  JUDGE PRO TEM                    ELECTRONIC RECORDING MONIT
NON-APP

                           Deputy Sheriff    NONE                Reporter

11:00 am | TC023636                         Plaintiff
                                            Counsel
         JAMES LEE CLARK
         VS                                 Defendant
         RITA FARRIS ELLISON, ET AL         Counsel

         170.6 CCP - JUDGE BARRY (COMPTO

NATURE OF PROCEEDINGS:

RULING ON SUBMITTED MATTER;

The Court observed and listened to James Clark as he
testified under oath. The Court found his testimony
to be credible, consistent and persuasive. He met his
legal burden in proving that Defendant Rita Gail
Farris-Ellison withheld and refused to return
$100,000.00 that belonged to the Plaintiff.

This finding is based on the following: The
Plaintiff's compelling testimony, Exhibit 1 (check
no. 1042, dated 8/12/2008, marked as "loan" from
Plaintiff to Defendant), Exhibit 2 (copy of 1/2/2009
money order from Plaintiff to Lenders Escrow Inc.),
Exhibits 3, 3a and 4 (confirming difficulties in
Plaintiff getting Mortgage Loan number 502197213 as
well as an accounting of the disbursement of the loan
proceeds).

The Court further finds that the Plaintiff did not
meet his legal burden in his request for punitive
damages. (Civil Code section 3294 subdivision (a))

Judgment is entered for Plaintiff against Defendant
Ellison for $100,000.00 plus costs. The Plaintiff's
demand for punitive damages is denied. Plaintiff to
submit a cost memorandum.

SO ORDERED.

                    Page   1 of   3   DEPT.  S27      MINUTES ENTERED
                                                      12/30/13
                                                      COUNTY CLERK

Certified copy of Judgement against Rita 100k.jpg

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 09/08/16 | | DEPT. SOS27 |
|---|---|---|
| HONORABLE Ross Klein     JUDGE | B. VIOLA | DEPUTY CLERK |
| HONORABLE      JUDGE PRO TEM | R. HICKMAN, C.A. | ELECTRONIC RECORDING MONITOR |
| NONE     Deputy Sheriff | NONE | Reporter |

| 2:30 pm | TC023636 | Plaintiff Counsel | |
|---|---|---|---|
| | JAMES LEE CLARK | | NO APPEARANCES |
| | VS | Defendant | |
| | RITA FARRIS ELLISON, ET AL | Counsel | |
| | 170.6 CCP - JUDGE BARRY (COMPTO | | |
| | 6 VOL -1 BOX, TO BASEMENT | | |
| | CLERK'S OFFICE FOR REQ | | |

NATURE OF PROCEEDINGS:

RULING ON SUBMITTED MATTER

The Court modifies, nunc pro tunc, the I
2013 ruling by adding the following:

The Fifth Amended Complaint is the operative
complaint. Judgment in favor of Plaintiff James Lee
Clark against Defendant Rita Farris Ellison was
based on the Court's finding that Plaintiff met
his legal burden in proving that the Defendant
breached her fiduciary duty to Plaintiff.

Plaintiff is to give notice.


        CLERK'S CERTIFICATE OF MAILING


I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the
minute order
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the courthouse in Long Beach,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,

               Page   1 of   2   DEPT. SOS27

| MINUTES ENTERED |
|---|
| 09/08/16 |
| COUNTY CLERK |

# EXHIBIT C

**FILED**

AUG 29 2012

DEPARTMENT OF REAL ESTATE

STATE OF CALIFORNIA

DEPARTMENT OF REAL ESTATE
BY: *Niederkorn*

\* \* \* \* \*

| | |
|---|---|
| In the Matter of the Accusation of | )   No. H-37565 LA |
| JUST THAT EZ FINANCIAL CORPORATION; and RITA FARRIS-ELLISON, individually and as designated officer of Just That EZ Financial Corporation, | ) ) )   L-2011120952 ) ) ) ) |
| Respondent(s). | ) ) |

<u>DECISION</u>

The Proposed Decision dated July 24, 2012,

of the Administrative Law Judge of the Office of

Administrative Hearings, is hereby adopted as the Decision

of the Real Estate Commissioner in the above-entitled

matter.

This Decision shall become effective at

12 o'clock noon on ___SEP 19 2012___.

IT IS SO ORDERED  _8/24/2012_ .

Real Estate Commissioner

By WAYNE S. BELL
Chief Counsel

BEFORE THE
DEPARTMENT OF REAL ESTATE
STATE OF CALIFORNIA

In the Matter of the Accusation Against:

JUST THAT EZ FINANCIAL
CORPORATION; and RITA FARRIS-
ELLISON, individually and as designated
officer of Just EZ Financial
Corporation,

Respondent.

Case No. H-37565 LA

OAH No. 2011120952

## PROPOSED DECISION

Samuel D. Reyes, Administrative Law Judge, Office of Administrative Hearings, heard this matter on June 25, 2012, in Los Angeles, California.

James R. Peel, Counsel, represented complainant Robin Trujillo.

Nana Serwaah Gyamfi, Attorney at Law, represented Just that EZ Financial Corporation (Respondent EZ Financial) and Rita Gayle Farris Ellison (Respondent), collectively referred to as Respondents.

Complainant seeks to discipline Respondents' real estate broker licenses based on Respondents' alleged failure to maintain escrow accounts as required by law, to sign disclosure forms as required by law, to maintain client funds separate from Respondents' funds, for their alleged use of an unauthorized escrow agent fictitious name, and for their alleged forfeiture of corporate powers, rights, and privileges. Respondent disputed some of the allegations and presented evidence in support of continued licensure.

Oral and documentary evidence was presented at the hearing, and the matter was submitted for decision.

## FACTUAL FINDINGS

1.    Complainant filed the Accusation in her official capacity as a Deputy Real Estate Commissioner of the State of California.

2.     Respondent EZ Financial, a Nevada corporation, held real estate broker license number 01238577 until its expiration on February 18, 2011. Respondent served as its designated officer. On October 1, 2010, the State of California Franchise Tax Board forfeited the corporation's powers, rights and privileges pursuant to the provisions of California Revenue and Taxation Code.

3.     On October 5, 1993, the Department issued broker license number 01168622 to Respondent, which license expires October 4, 2013, unless renewed. The license has not been previously disciplined.

4.     On July 28, 2011, the Department completed an audit of Respondent EZ Financial's real estate operations for the period of March 1, 2008, through February 28, 2011.

5.     Review of Respondents' records during the audit revealed that Respondents or their agents had not signed some mortgage disclosure forms, and that the license name and number of the broker or its agents was not listed in some of the disclosure forms, found in three loan files, those of James Clark (Clark), discussed below, Linda N. Nesbit, and Josella Mc Firstley.

6.     At all times material, Respondents acted in the capacity of a real estate broker.

7.     On October 21, 2008, in expectation of compensation, Respondents negotiated a refinance loan on property owned by Clark at 625 Laconia Boulevard, Los Angeles, California. The lender was Flagstar Bank, and the loan amount was $300,000.

8.     Respondents operated broker escrow services under the name of Lenders Escrow, Inc., a business which had not been licensed by the Department to conduct escrow activities.

9.     Lenders Escrow, Inc. acted as the escrow agent in the Clark transaction. Escrow closed on the refinance transaction on October 21, 2008. On October 21, 2008, Investor's Title Company forwarded proceeds of $58,549.07 to Lenders Escrow, Inc., $49,213.07 of which were due to Clark.

10.     The entire $58,549.07 was deposited into Respondents' general account. Checks were thereafter drawn on the general account to pay sums owed in connection with the transaction as well as sums not related to the transaction.

11.     Respondents did not maintain a separate trust account. Nor did they maintain records with the information required by California Code of Regulations (CCR), title 10, sections 2831 and 2831.2 in columnar form or otherwise.

12.     A Lenders Escrow, Inc. ledger shows that the difference between the $58,549.07 check from the title insurance company and the $49,213.07 due to Clark, or $9,336, was allocated as follows: $8,001 to Respondent EZ Financial; $1,200 to Lenders Escrow, Inc; $50 to notary Warren Leon Johnson; and $85 to insurance agent Morris Davis Jr.

13.     Lenders Escrow, Inc. Escrow Officer Genevieve Adolphus wrote a check for $49,213.07, payable to Clark, and prepared a cover letter informing Clark about the check. The letter also referred to the HUD Settlement Form, which document explained how the loan proceeds were applied.

14.     The testimony is in conflict regarding what happened to the $49,213.07. Clark denied that he had received the settlement statement or the money. In a letter dated August 25, 2009, Clark complained to the lender, Flagstar Bank, that he had not received any money from the cash-out refinance. Clark has filed a civil lawsuit against Respondents to recover the money he alleges never to have received.

15.     a.      Respondent testified that Clark loaned her the money. She testified that she had known Clark for approximately 20 years and that they were friends and had engaged in business activity in the past. Clark held a building contractor's license, and had worked for her in such capacity. Clark had also utilized Respondent's real estate services to purchase homes that he refurbished for resale. Respondent testified that when she presented him with the check for $49,213.07, Clark told her that he did not need the money at that time. He noted that business was slow for Respondent, and that she could use the money. Clark asked Respondent to make periodic disbursements to him or on his behalf to others he designated. Respondent believed she had obtained a loan, and intended to repay the loan.

b.      There is no writing evidencing a loan from Clark to Respondent, or setting forth any terms under which Respondent could use any of the $49,213.07 owed to Clark.

c.      Respondent estimated that she paid $28,407.47 to Clark or to others as directed by Clark, including family members and contractors. Respondent provided copies of checks in support of her testimony. Clark denied receiving the checks at issue, except for one, which he stated constituted payment for work performed on one of Respondent's homes.

d.      Respondent estimated that she actually used approximately $22,437.60 of the money loaned to her by Clark.

16.     Respondent testified that at a later time, "out of the blue," Clark demanded all of his money. She told him that she did not have it, but that she would repay him in installments. Clark refused her offer. Respondent asserts that she is willing to repay the loan, but has not made any payments.

17.     Respondent's daughter, Tamera Farris (Farris), who worked at Respondent's business from 1998 until November 2011, corroborated Respondent's testimony regarding Clark's loan. Farris testified that she has known Clark since she was a little girl and that he was a friend of her mother. She heard him say that he understood his mother was having a difficult time with the business and that he did not need all the money at that time. He wanted to have access to the money as he needed it, and that he would come by to collect checks. Clark visited the office at least once per week, and Farris saw him pick up checks on subsequent visits.

18.     Respondent's sister in law, Odelle Farris, testified that she was a beneficiary of Clark's good will. At her request, Clark lent her $1,800 to deal with some financial difficulties. Odelle Farris testified that Clark told her that he would call Respondent to ask her to write a check. He apparently did, as Respondent presented her with a check for $1,800. Odelle Farris testified that Clark did not specify the terms under which he was lending her the money. She repaid the debt by having some of her construction workers perform work on one of Clark's properties.

19.     While Respondent's testimony that she received a loan from Clark is subject to doubt, she did have a social and professional relationship with Clark that spanned 20 years and such a loan could have been possible. In addition, her testimony was corroborated by contemporaneous checks and by the testimonies of Farris and Odelle Farris and cannot be dismissed. On the other hand, the existence of a loan was directly and adamantly denied by Clark, and he has taken actions consistent with his assertions, namely filing a lawsuit to collect money allegedly misappropriated, which lends credibility to his testimony. However, Clark was not a fully credible witness on the stand, as he was evasive and non-responsive at times, and did not contradict the testimony about his relationship with Respondent. In sum, neither witness was fully credible, and as a result, Respondent did not establish that she received a loan, but the Department did not establish that she engaged in fraudulent conduct toward Clark.

## LEGAL CONCLUSIONS

1.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code sections 10177, subdivision (d), 10240, and CCR, title 10, section 2840, in that Respondents failed to sign required disclosure forms and failed to include a broker's name and license number in required disclosure forms, by reason of factual finding numbers 4 through 6.

2.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code sections 10177, subdivision (d), 10159.5, and CCR, title 10, section 2731, in that Respondents conducted business under a fictitious name that had not been approved by the Department, by reason of factual finding numbers 2, 3, and 6 through 9.

4

3.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code sections 10177, subdivision (d), 10145, subdivision (a), and CCR, title 10, section 2832, in that Respondents failed to deposit Clark's funds in a trust account, by reason of factual finding numbers 6 through 13.

4.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10177, subdivision (d), in that Respondents failed to maintain a trust account in accordance with the requirements of CCR, title 10, sections 2831 and 2831.2, by reason of factual finding numbers 6 through 13.

5.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10176, subdivision (e), in that Respondents commingled Clark's funds with their funds, by reason of factual finding numbers 6 through 10.

6.     Grounds exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10177, subdivision (g) in that Respondents demonstrated incompetence in handling the Clark transaction, by reason of factual finding numbers 6 through 11.

7.     Grounds do not exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10176, subdivision (i), in that it was not established that Respondents engaged in fraud or dishonest dealing in the Clark transaction, by reason of factual finding numbers 6 through 19.

8.     Grounds do not exist to discipline Respondents' licenses pursuant to Business and Professions Code section 10177, subdivision (d), and CCR, title 10, section 2742, in that it was not established that Respondent EZ Financial's corporate powers and privileges had been forfeited at the time of the Clark transaction, by reason of factual finding numbers 2 through 13.

9.     All evidence presented in mitigation or rehabilitation has been considered. Respondents' misconduct is serious, recent, and injured a consumer of their services. Accordingly, significant discipline is required for the protection of the public. On the other hand, Respondent had a long-term relationship with Clark and believed she had obtained a loan, and it was not established that Respondent engaged in any fraudulent conduct. She has no other discipline. The order that follows is therefore required and sufficient for the protection of the public. Under the order, Respondent will only be able to obtain a salesperson's license, will be under the direct supervision of a broker, and will not be responsible for trust funds.

ORDER

A.     All licenses and licensing rights of Respondent EZ Financial Corporation under the Real Estate Law are revoked.

5

B.    All licenses and licensing rights of Respondent Rita Gayle Farris Ellison under the Real Estate Law are revoked; provided, however, a restricted real estate salesperson license shall be issued to Respondent pursuant to Section 10156.5 of the Business and Professions Code if Respondent makes application therefore and pays to the Department of Real Estate the appropriate fee for the restricted license within 90 days from the effective date of this Decision. The restricted license issued to Respondent shall be subject to all of the provisions of Section 10156.7 of the Business and Professions Code and to the following limitations, conditions and restrictions imposed under authority of Section 10156.6 of that Code:

1.    The restricted license issued to Respondent may be suspended prior to hearing by Order of the Real Estate Commissioner in the event of Respondent's conviction or plea of nolo contendere to a crime which is substantially related to Respondent's fitness or capacity as a real estate licensee.

2.    The restricted license issued to Respondent may be suspended prior to hearing by Order of the Real Estate Commissioner on evidence satisfactory to the Commissioner that Respondent has violated provisions of the California Real Estate Law, the Subdivided Lands Law, Regulations of the Real Estate Commissioner or conditions attaching to the restricted license.

3.    Respondent shall not be eligible to apply for the issuance of an unrestricted real estate license nor for the removal of any of the conditions, limitations or restrictions of a restricted license until four years have elapsed from the effective date of this Decision.

4.    Respondent shall submit with any application for license under an employing broker, or any application for transfer to a new employing broker, a statement signed by the prospective employing real estate broker on a form approved by the Department of Real Estate which shall certify:

(a)    That the employing broker has read the Decision of the Commissioner which granted the right to a restricted license; and

(b)    That the employing broker will exercise close supervision over the performance by the restricted licensee relating to activities for which a real estate license is required.

5.    Respondent shall, within nine months from the effective date of this Decision, present evidence satisfactory to the Real Estate Commissioner that Respondent has, since the most recent issuance of an original or renewal real estate license, taken and successfully completed the continuing education requirements of Article 2.5 of Chapter 3 of the Real Estate Law for renewal of a real estate license. If Respondent fails to satisfy this condition,

6

the Commissioner may order the suspension of the restricted license until the Respondent presents such evidence. The Commissioner shall afford Respondent the opportunity for a hearing pursuant to the Administrative Procedure Act to present such evidence.

6.      Respondent shall, within six months from the effective date of this Decision, take and pass the Professional Responsibility Examination administered by the Department including the payment of the appropriate examination fee. If Respondent fails to satisfy this condition, the Commissioner may order suspension of Respondent's license until Respondent passes the examination.

7.      Should a court of competent jurisdiction impose a restitution obligation, such obligation shall be incorporated as a term and condition of any restricted license issued to Respondent.

DATED: 7/24/12

SAMUEL D. REYES
Administrative Law Judge
Office of Administrative Hearings

7

James R. Peel, Counsel (SBN 47055)
Bureau of Real Estate
320 West 4th Street, Suite 350
Los Angeles, California 90013-1105

Telephone: (213) 576-6982
(Direct)    (213) 576-6913

**FILED**

JAN - 6 2016

BUREAU OF REAL ESTATE

By _____

BEFORE THE BUREAU OF REAL ESTATE

STATE OF CALIFORNIA

*  *  *

In the Matter of the Application of   )      No. H-40089 LA
                                       )
RITA GAYLE FARRIS-ELLISON,             )     STATEMENT OF ISSUES
                                       )
                        Respondent.    )     Mortgage Loan
                                       )     Originator License
                                       )     Endorsement
                                       )

        The Complainant, Chika Sunquist, a Supervising

Special Investigator of the State of California, for cause of

Statement of Issues against RITA GAYLE FARRIS-ELLISON

("Respondent") alleges as follows:

                            1.

        The Complainant, Chika Sunquist, a Supervising

Special Investigator of the State of California, makes this

Statement of Issues in her official capacity.

///

///

                            1.

2.

Respondent is presently licensed and/or has license rights under the Real Estate Law, Part 1 of Division 4 of the Business and Professions Code (Code) as a restricted real estate salesperson.

3.

On or about May 27, 2015, Respondent made an application to the Bureau for an individual mortgage loan originator license endorsement (hereinafter "license endorsement").

4.

Respondent answered "No" in response to one of the Disclosure Questions in the mortgage loan originator endorsement application ("Application") requiring the disclosure of previous civil litigation.

5.

Respondent's conduct in answering "No" to the Application question set forth in Paragraph 4, above, constitutes withholding information and/or making a material misstatement as to the existence of a 2011, State of California, County of Los Angeles, civil judgment involving Cares Lee C., plaintiff, versus Respondent, defendant.

///

///

-- 2 --

6.

On or about October 19, 2012, Before the Department
of Real Estate, State of California, H-37565 LA, the real
estate broker license of Respondent was revoked with the right
to apply for a restricted salesperson license which was issued
December 19, 2012, and remains in effect.

7.

The conduct of Respondent, as alleged above,
constitutes cause for the denial of Respondent's license
endorsement under Code Sections 10166.05(c) and 10166.051(b),
and Regulations 2758.3 and 2945.2, Chapter 6, Title 10,
California Code of Regulations.

///
///
///
///
///
///
///
///
///
///
///
///

WHEREFORE, Complainant prays that a hearing be
conducted on the allegations of this Statement of Issues, and
that upon proof thereof, a decision be rendered that the
Commissioner refuse to authorize the issuance of, and deny the
issuance of, a license endorsement to Respondent RITA GAYLE
FARRIS-ELLISON, and for such other and further relief as may be
proper under the provisions of law.

Dated at Sacramento, California

this 4th day of January, 2016.


Chika Sunquist
Supervising Special Investigator

cc:   Rita Gayle Farris-Ellison
      Chika Sunquist
      Sacto.

- 4

# EXHIBIT D

14

## DESCRIPTION

THE LAND REFERRED TO IN THIS DESCRIPTION SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, CITY OF LOS ANGELES AND IS DESCRIBED AS FOLLOWS:

LOT 29, IN BLOCK 12 OF ATHENS, AS PER MAP RECORDED IN BOOK 8 PAGES 146 AND 147 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

6117-014-014

ness Search - Business Entities - Business       ams

http://kepler.sos.ca.gov/cbs.aspx



California Secretary of State Debra Bowen

| Secretary of State | Administration | Elections | Business Programs | Political Reform | Archives | Registries |

**Business Entities (BE)**

Online Services
· Business Search
· Disclosure Search
· E-File Statements
· Mail Processing Times

Main Page

Service Options

Name Availability

Forms, Samples & Fees

Annual/Biennial Statements

Filing Tips

Information Requests
(certificates, copies &
status reports)

Service of Process

FAQs

Contact Information

Resources
· Business Resources
· Tax Information
· Starting A Business
· International Business
  Relations Program

Customer Alert
(misleading business
solicitations)

## Business Entity Detail

Data is updated weekly and is current as of Friday, August 27, 2010. It is not a complete or certified record of the entity.

| | |
|---|---|
| **Entity Name:** | LENDERS ESCROW, INC. |
| **Entity Number:** | C2105360 |
| **Date Filed:** | 04/13/1998 |
| **Status:** | SUSPENDED |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | 4700 CRENSHAW BLVD STE 101 |
| **Entity City, State, Zip:** | LOS ANGELES CA 90043 |
| **Agent for Service of Process:** | ** RESIGNED ON 09/25/2008 |
| **Agent Address:** | * |
| **Agent City, State, Zip:** | * |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search    New Search    Printer Friendly    Back to Search Results**

**Privacy Statement | Free Document Readers**

Copyright © 2010  California Secretary of State

9/1/2010 4:08 PM

1 of 1

**Alex Padilla**
**California Secretary of State**

 # Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Monday, April 8, 2019. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## C2105360    LENDERS ESCROW, INC.

| | |
|---|---|
| **Registration Date:** | 04/13/1998 |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Type:** | DOMESTIC STOCK |
| **Status:** | FTB SUSPENDED |
| **Agent for Service of Process:** | ** RESIGNED ON 09/25/2008 |
| | * |
| **Entity Address:** | 4700 CRENSHAW BLVD STE 101 |
| | LOS ANGELES CA 90043 |
| **Entity Mailing Address:** | 4700 CRENSHAW BLVD STE 101 |
| | LOS ANGELES CA 90043 |

| Document Type ⇅ | File Date ⇣ | PDF |
|---|---|---|
| AGENT RESIGNED | 09/25/2008 | |
| SI-NO CHANGE | 03/05/2007 | |
| SI-COMPLETE | 11/13/2001 | Image unavailable. Please request paper copy. |
| REGISTRATION | 04/13/1998 | |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

**Modify Search**        **New Search**        **Back to Search Results**

R0047598



**State of California**
**Secretary of State**

RA-100

**RESIGNATION OF AGENT**
**UPON WHOM PROCESS MAY BE SERVED**

There is no fee for filing this form.

IMPORTANT – Read Instructions before completing this form.

**FILED**
in the office of the Secretary of State
of the State of California

SEP 2 5 2008

688909

This Space For Filing Use Only

**ENTITY TYPE** ( Identify the type of business from which you are resigning as agent for service of process.  Check only one box )

1. [X] CORPORATION (domestic or qualified foreign)

[ ] LIMITED LIABILITY COMPANY (domestic or registered foreign)

[ ] LIMITED PARTNERSHIP (domestic or registered foreign)

[ ] LIMITED LIABILITY PARTNERSHIP (domestic or registered foreign)

[ ] REGISTERED GENERAL PARTNERSHIP

[ ] UNINCORPORATED ASSOCIATION

[ ] FOREIGN PARTNERSHIP
(other than a foreign limited partnership)

[ ] FOREIGN ASSOCIATION

**ENTITY NAME** (Enter the name of the entity from whom you are resigning as agent for service of process.)

2. Lenders Escrow, Inc.

**ENTITY FILE NUMBER** (Enter the file number issued to the above-named entity by the Secretary of State.)

3. 2105360

**JURISDICTION** (Enter the jurisdiction (state or country) under which the above-named entity was organized.)

4. CA

**STATEMENT OF RESIGNATION** (The following statement declares intent to resign as agent for service of process and should not be altered.)

5 THE UNDERSIGNED HEREBY RESIGNS AS AGENT UPON WHOM PROCESS MAY BE SERVED IN CALIFORNIA FOR THE ABOVE-NAMED ENTITY.

**EXECUTION**

6. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

September 24, 2008

DATE

Business Filings Incorporated

TYPE OR PRINT NAME OF DECLARANT (i.e., the individual or corporation resigning as agent for service of process for the above-named entity)

Mary Jo Spalinger

SIGNATURE OF DECLARANT or SIGNATURE OF AUTHORIZED
REPRESENTATIVE OF DECLARANT (if declarant is a corporation)

Asst. Sec. for Business Filings Incorporated

TITLE OF OFFICE OF AUTHORIZED REPRESENTATIVE OF
DECLARANT (if declarant is a corporation)

RA-100 (REV 01/2008)                    A                    APPROVED BY SECRETARY OF STATE



# State of California
## Secretary of State

07-118771

36

## STATEMENT OF INFORMATION
(Domestic Stock Corporation)

**FEES (Filing and Disclosure): $25.00. If amendment, see instructions.**

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. CORPORATE NAME (Please do not alter if name is preprinted.)

**C2105360**
**LENDERS ESCROW, INC.**
**4700 CRENSHAW BLVD STE 101**
**LOS ANGELES CA   90043**

**FILED**
In the office of the Secretary of State
of the State of California,

MAR 0 5 2007

This Space For Filing Use Only

**DUE DATE:  04-30-07**

**CALIFORNIA CORPORATE DISCLOSURE ACT** (Corporations Code section 1502.1)

A publicly traded corporation must file with the Secretary of State a Corporate Disclosure Statement (Form SI-PT) annually, within 150 days after the end of its fiscal year. Please see reverse for additional information regarding publicly traded corporations.

**NO CHANGE STATEMENT**

2. ☑ If there has been no change in any of the information contained in the last Statement of Information filed with the Secretary of State, check the box and proceed to Item 15.

If there have been any changes to the information contained in the last Statement of Information filed with the Secretary of State, or no statement has been previously filed, this form must be completed in its entirety.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 3 and 4 cannot be P.O. Boxes.)

| | | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| 3. | STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | |

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. | STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | CA | |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|---|
| 5. | CHIEF EXECUTIVE OFFICER/ | | | |
| 6. | SECRETARY/ | | | |
| 7. | CHIEF FINANCIAL OFFICER/ | | | |

**NAMES AND COMPLETE ADDRESSES OF ALL DIRECTORS, INCLUDING DIRECTORS WHO ARE ALSO OFFICERS** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|---|
| 8. | NAME | | | |
| 9. | NAME | | | |
| 10. | NAME | | | |

11. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California address. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 13 must be left blank.)

12. NAME OF AGENT FOR SERVICE OF PROCESS

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 13. | ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | | CA | |

**TYPE OF BUSINESS**

14. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

15. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT

| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |
|---|---|---|---|
| | | President | 3/06/07 |

SI-200 N/C (REV 07/2006)

APPROVED BY SECRETARY OF STATE

004229S

2105360

# ARTICLES OF INCORPORATION

FILED
In the office of the Secretary of State
of the State of California

APR 1 3 1998

*Bill Jones*
BILL JONES, Secretary of State

## Article I

The name of the corporation is: Lenders Escrow, Inc.

## Article II

The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business, or the practice of a profession permitted to be incorporated by the California Corporations Code.

## Article III

This corporation is authorized to issue only one class of shares of stock; and the total number of shares which this corporation is authorized to issue is two thousand (2000).

## Article IV

The name and address in the State of California of this corporation's initial agent for service of process is: Rita Farris, 4700 Crenshaw Blvd. Suite 3, Los Angeles, CA 90043.

Richard A. Oster

Alex Padilla
**California Secretary of State**

 # Business Search - Entity Detail

The California Business Search is updated daily and reflects work processed through Monday, April 8, 2019. Please refer to document **Processing Times** for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity. Not all images are available online.

## C2133147    JUST THAT EZ FINANCIAL CORPORATION

| | |
|---|---|
| **Registration Date:** | 01/11/1999 |
| **Jurisdiction:** | NEVADA |
| **Entity Type:** | FOREIGN STOCK |
| **Status:** | FTB FORFEITED |
| **Agent for Service of Process:** | GARNETTE A ELLISON |
| | GARNETTE A ELLISON, 4700 CRENSHAW BLVD |
| | LOSNANGELES CA 90043 |
| **Entity Address:** | 4700 CRENSHAW BLVD |
| | LOS ANGELES CA 90043 |
| **Entity Mailing Address:** | 4700 CRENSHAW BLVD |
| | LOS ANGELES CA 90043 |

| Document Type ⇅ | File Date ⬇ | PDF |
|---|---|---|
| SI-NO CHANGE | 01/30/2010 | |
| SI-COMPLETE | 01/16/2005 | |
| REGISTRATION | 01/11/1999 | |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- If the image is not available online, for information on ordering a copy refer to **Information Requests**.
- For information on ordering certificates, status reports, certified copies of documents and copies of documents not currently available in the Business Search or to request a more extensive search for records, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Frequently Asked Questions**.

**Modify Search**     **New Search**     **Back to Search Results**



2133147

# STATEMENT AND DESIGNATION
## BY
## FOREIGN CORPORATION

FILED
In the office of the Secretary of State
of the State of California

JAN 1 1 1999

*Bill Jones*

BILL JONES, Secretary of State

JUST THAT EZ FINANCIAL CORPORATION
_____
(Name of Corporation)

___  _____, a corporation organized

and existing under the laws of _____NEVADA_____, makes the following
(State or Place of Incorporation)

statements and designation:

1.  The address of its principal executive office is  2413 S. EASTERN AVE., SUITE 143

    LAS VEGAS, NV 89104
    _____
    (Insert complete address of principal executive office wherever located.)
    **DO NOT USE POST OFFICE BOX**

2.  The address of its principal office in the State of California is _____

    4700 CRENSHAW BLVD., SUITE 3, LOS ANGELES, CA 90043
    _____
    (Insert complete address of principal office in California.)
    **DO NOT USE POST OFFICE BOX**

**DESIGNATION OF AGENT FOR SERVICE OF PROCESS IN THE STATE OF CALIFORNIA**
(Complete Either Item 3 or Item 4)

3.  (Use this paragraph if the process **agent is** a natural **person.**)

    RITA FARRIS
    _____,

a natural person residing in the State of California, whose complete address  is

4132 VIRGINIA AVE., LYNWOOD, CA 90262
_____

_____
**DO NOT USE POST OFFICE BOX**

is designated as agent upon whom process directed to the undersigned corporation

may be served within the State of California, in the manner provided by law.

4. (Use this paragraph if the process **agent is a corporation.**)

_____, a corporation

organized and existing under the laws of _____, is designated as

agent upon whom process directed to the undersigned corporation may be served

within the State of California, in the manner provided by law.

**NOTE:**   Before a corporation may be designated by any other corporation as an
agent for service of process, a corporate agent must have complied with
Section 1505, California Corporations Code.

5. The undersigned corporation hereby irrevocably consents to service of process

directed to it upon the agent designated above, and to service of process on the

Secretary of State of the State of California if the agent so designated or the

agent's successor is no longer authorized to act or cannot be found at the address

given.

JUST THAT EZ FINANCIAL CORPORATION
_____
(Name of Corporation)

_____
(Signature of Corporate Officer)

RITA FARRIS/ PRESIDENT
_____
(Typed Name and Title of Officer Signing)



# CERTIFICATE OF EXISTENCE
# WITH STATUS IN GOOD STANDING

I, DEAN HELLER, the duly elected and qualified Nevada Secretary of State, do hereby certify that I am, by the laws of said State, the custodian of the records relating to filings by corporations, limited-liability companies, limited partnerships, and limited-liability partnerships pursuant to Title 7 of the Nevada Revised Statutes which are either presently in a status of good standing or were in good standing for a time period subsequent of 1976 and am the proper officer to execute this certificate.

I further certify that the records of the Nevada Secretary of State, at the date of this certificate, evidence, **JUST THAT EZ FINANCIAL CORPORATION** as a Corporation duly organized under the laws of Nevada and existing under and by virtue of the laws of the State of Nevada since April 14, 1998, and is in good standing in this state.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Great Seal of State, at my office, in Las Vegas. Nevada, on July 17, 1998.



*Dean Heller*
Secretary of State

By

*Angela LaWanck*
Certification Clerk



# State of California
## Kevin Shelley
## Secretary of State
### STATEMENT OF INFORMATION
(Foreign Corporation)

**F**

**E-099636**

FILED
SACRAMENTO, CALIF.

**Jan - 16 2005**

*Kevin Shelley*

**Kevin Shelley
Secretary of State**

This Space For Filing Use Only

**FEES (Filing and Disclosure): $25.00. If amendment, see instructions.**

**IMPORTANT - READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

1. CORPORATE NAME (Please do not alter if name is preprinted )

C2133147
JUST THAT EZ FINANCIAL CORPORATION

4700 CRENSHAW BLVD
LOS ANGELES CA 90043

**CALIFORNIA CORPORATE DISCLOSURE ACT** (Corporations Code section 2117.1)

A publicly traded corporation must file with the Secretary of State a Corporate Disclosure Statement (Form SI-PT) annually, within 150 days after the end of its fiscal year. Please see reverse for additional information regarding publicly traded corporations.

**NO CHANGE STATEMENT**

2. ☐ If there has been no change in any of the information contained in the last Statement of Information filed with the Secretary of State, check the box and proceed to Item 11.
If there have been any changes to the information contained in the last Statement of Information filed with the Secretary of State, or no statement has been previously filed, this form must be completed in its entirety.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 3 and 4 cannot be P.O. Boxes.)

| 3. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | ZIP CODE |
|---|---|---|
| 4700 CRENSHAW BLVD    LOS ANGELES, CA 90043 | | |

| 4. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4700 CRENSHAW BLVD   LOS ANGELES, CA 90043 | | | |

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS** (The corporation must have these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 5. CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| RITA G FARRIS-ELLISON   4700 CRENSHAW BLVD   LOS ANGELES, CA 90043 | | | |

| 6. SECRETARY/ | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| TAMARA  D  FARRIA   4700 CRENSHAW BLVD   LOS ANGELES, CA 90043 | | | |

| 7. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| TAMARA  D  FARRIS   4700 CRENSHAW BLVD   LOS ANGELES, CA 90043 | | | |

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 9 must be completed with a California address. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 9 must be left blank.)

8. NAME OF AGENT FOR SERVICE OF PROCESS

GARNETTE A ELLISON

| 9. ADDRESS OF THE AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| GARNETTE A ELLISON  4700 CRENSHAW BLVD  LOSANGELES, CA 90043 | | | |

**TYPE OF BUSINESS**

10. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

REAL ESTATE & MORTGAGE LOANS

11. THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

| RITA G FARRIS-ELLISON | | PRESIDENT | 01/16/2005 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

| SI-350 (REV 09/2004) | APPROVED BY SECRETARY OF STATE |
|---|---|



## State of California
## Secretary of State



**STATEMENT OF INFORMATION**
(Foreign Corporation)

**FEES (Filing and Disclosure): $25.00.  If amendment, see instructions.**

**IMPORTANT - READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**E-936057**

# FILED

In the office of the Secretary of State
of the State of California

## Jan - 30 2010

This Space For Filing Use Only

| 1. CORPORATE NAME  (Please do not alter if name is preprinted.) | F |
|---|---|

C2133147
JUST THAT EZ FINANCIAL CORPORATION

4700 CRENSHAW BLVD
LOS ANGELES, CA 90043

**DUE DATE:**

**NO CHANGE STATEMENT** ( Not applicable if agent address of record is a P.O. Box address. See instructions.)

2. [X]  If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed **to Item 12.**

If there has been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement has been previously filed, this form must be completed in its entirety.

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 3 and 4 cannot be P.O. Boxes.)

| 3. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY | STATE | ZIP CODE |
|---|---|---|---|

| 4. STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE CA | ZIP CODE |
|---|---|---|---|

| 5. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 3 | CITY | STATE | ZIP CODE |
|---|---|---|---|

**NAMES AND COMPLETE ADDRESSES OF THE FOLLOWING OFFICERS**  (The corporation must have these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 6. CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

| 7. SECRETARY/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

| 8. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|

**AGENT FOR  SERVICE OF PROCESS**  (If the agent is an individual, the agent must reside in California and Item 10 must be completed with a California street address ( a P.O. Box address is not acceptable).  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 10 must be left blank.)

9. NAME OF AGENT FOR SERVICE OF PROCESS

| 10. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL** | CITY | STATE CA | ZIP CODE |
|---|---|---|---|

**TYPE OF BUSINESS**

11. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

12  THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT

| 01/30/2010 | RITA G FARRIS-ELLISON | PRESIDENT | |
|---|---|---|---|
| DATE | TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | TITLE | SIGNATURE |

SI-350 (REV 01/2008)   APPROVED BY SECRETARY OF STATE

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 12/30/13 | DEPT.  S27 |

| | | | |
|---|---|---|---|
| HONORABLE ROSS M. KLEIN | JUDGE | L. HERNANDEZ | DEPUTY CLERK |
| | | R. HICKMAN, CA | |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONIT |
| NON-APP | | | |
| | Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 11:00 am | TC023636 | Plaintiff<br>Counsel |
| | JAMES LEE CLARK<br>VS<br>RITA FARRIS ELLISON, ET AL | Defendant<br>Counsel |
| | 170.6 CCP - JUDGE BARRY (COMPTO | |

**NATURE OF PROCEEDINGS:**

_____ Dated: 12/30/13
ROSS M. KLEIN, JUDGE

Clerk to notice Plaintiff. Plaintiff to give notice.

CLERK'S CERTIFICATE OF MAILING

I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the
MINUTE ORDER - RULING ON SUBMITTED MATTER
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the courthouse in LONG BEACH,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,
in accordance with standard court practices.


Dated: 12/30/2013

Sherri R. Carter, Executive Officer/Clerk

Page   2 of   3   DEPT.  S27

MINUTES ENTERED
12/30/13
COUNTY CLERK



5151 Corporate Drive
Troy, Michigan  48098-2639
Phone: (248) 312-2000
www.flagstar.com

September 10, 2009

Mr. James Clark
625 Laconia Blvd.
Los Angeles, CA  90044

Re:    Your Mortgage Loan with Flagstar Bank, Loan No.  502197213

Dear Mr. Clark:

As we have discussed previously, in an effort to assist you in resolving your issue with Just
That EZ Financial Corporation, we asked the Company to provide us with a copy of the
documents that you signed, authorizing EZ Financial to hold and disburse some of the
proceeds of your mortgage loan upon your request.  EZ Financial has not provided the
documents and, at this point, it does not appear that the company intends to do so.

When we spoke, I did explain to you that Flagstar Bank does not have the funds that you
believe are owed to you.  Once your loan was scheduled to close, we wire transferred the full
amount of your mortgage loan to Lenders Title, who had responsibility to disburse the funds
as detailed on your HUD-1 Settlement Statement.  It appears that Lenders Title utilized EZ
Financial as its settlement agent.

At this point, there is nothing further that we can do.  We attempted to intervene with EZ
Financial in order to assist you but, as I've explained, the company has not cooperated with
us.  You should consult with an attorney to discuss the options that you may have against
EZ Financial and/or Lenders Title.

Sincerely,

Michele K. Spear
Attorney At Law

Exhibit B



# California Business Portal

**DISCLAIMER:** The information displayed here is current as of JUL 24, 2009 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| LENDERS ESCROW, INC. | | |
| **Number:** C2105360 | **Date Filed:** 4/13/1998 | **Status:** suspended |
| **Jurisdiction:** California | | |
| **Address** | | |
| 4700 CRENSHAW BLVD STE 101 | | |
| LOS ANGELES, CA 90043 | | |
| **Agent for Service of Process** | | |
| ** RESIGNED ON 09/25/2008 | | |

Blank fields indicate the information is not contained in the computer file.

* the status of the corporation is "Surrender", the agent for service of process automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

James Lee Clark
625 Laconia Blvd.
Los Angeles, CA 90044
IN PROPIA PERSONA



FILED
Superior Court Of California
County Of Los Angeles

DEC 3 0 2013

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Lilian Hernandez

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES LEE CLARK | **CASE NO.: TC023636** |
| PLAINTIFF, | |
| | **JUDGMENT** |
| RITA FARRIS ELLISON, ET AL. | |
| DEFENDANT(S) | |

---

It is hereby ordered, adjudged and decreed that judgment shall be entered in favor

of Plaintiff against Defendant Rita Farris Ellison in the amount of $100,000.00,

plus costs. Plaintiff's request for punitive damages is denied.

Dated:  December 30, 2013

_____
JUDGE OF THE SUPERIOR COURT
JUDGE ROSS M. KLEIN



E-410-3
Troy, MI 48098
Office: 248-312-5571
Fax: 888.702.2493
cynthia.kamat@flagstar.com
www.flagstar.com

| | | | |
|---|---|---|---|
| Rita Ellison | | Cindy, Why are you requesting this information? ... | 08/10/2009 09:24:25 PM |

From:      Rita Ellison <rita.ellison@gmail.com>
To:        Cyndi.Kamat@flagstar.com
Date:      08/10/2009 09:24 PM
Subject:   Re: 502197213 James Clark - Just That EZ Financial Corporation 41982

Cindy,

Why are you requesting this information?  We have not receive anything explaining your audit
or why you are requesting this information.  Our phone number is working as we receive calls
everyday, you can also call on 323-295-3030.

Thanks,
Rita Ellison

On Mon, Aug 10, 2009 at 11:25 AM, <Cyndi.Kamat@flagstar.com> wrote:
  Rita:

  Thank you for your response.  We still need to receive copies of the cancelled checks for all payoffs.
  Please provide copy of authorization letter signed by Mr. Clark that dislcoses that he is requesting you
  to hold  proceeds check of $ 50,666.75 and disburse monies to others as he directs.  Have all funds
  been disbursed on this file?  Please provide copies of all cancelled checks disbursed on this file.

  We are unable to contact you at 323-295-8080 - this number is busy and/or will not connect.  Please
  provide another telephone number that we can reach you at.  Thank you.



Cyndi Kamat
Auditor
Quality Assurance / Audit Department
5151 Corporate Drive
E-410-3
Troy, MI 48098
Office: 248-312-5571
Fax: 888.702.2493
cynthia.kamat@flagstar.com
www.flagstar.com

Rita Ellison —08/07/2009 11:57:42 PM—Cyndi, The loans with Litton Loan Servicing and Gerald Feldman were
paid off

FSTARD00004

(10/15/2008 at 4:11 pm)(FSTROYIMGFAX03) First Bank Date/Time Stamp - This header is put on all received faxes and shows the true received time.

FROM : Lenders_Escrow_(323)295-6417      PHONE NO. : 3232956412          Oct. 15 2008 12:34PM P?
        Oct. 15 2008 11:? PM



**First American Title Insurance Company**
National Agency Service
Operations Headquarters
1 First American Way, DFW 4-4, Westlake TX 76262
(817) 699-3753 · (800) 327-1018 · FAX (817) 826-1924

Wednesday, October 15, 2008 1:52:31 PM

Flagstar Bank, FSB, ISAOA
P.O. Box 7026
Troy, MI 48007-7026

Name of Issuing Agent, Approved Attorney or Approved Closing Vendor (hereafter, "Issuing Agent," "Approved Attorney" or "Approved Closing Vendor", as the case may require):

    Investors Title Company
    700 N. Brand Blvd.
    Suite 1100
    Glendale, CA - 91203
    Phone: (818) 476-4000

Transaction (hereafter, "the Real Estate Transaction"):

    Borrower: James Clark
    Property Address: 625 Laconia Blvd., Los Angeles, CA 90044
    Reference No: 502187213

Re: Order #110280

Dear Sir or Madame:

First American Title Insurance Company (the "Company") agrees, subject to the Conditions and Exclusions set forth below, to reimburse you for actual loss incurred by you in connection with the closing of the Real Estate Transaction conducted by the Issuing Agent, Approved Attorney or Approved Closing Vendor, provided:

    (A) title insurance of the Company is specified for your protection in connection with the closing of the Real Estate Transaction;

    (B) you are to be the (i) lender secured by a mortgage (including any other security instrument) of an interest in land, its assignee or a warehouse lender, (ii) purchaser of an interest in land, or (iii) lessee of an interest in land; and

    (C) the aggregate of all funds you transmit to the Issuing Agent, Approved Attorney or Approved Closing Vendor for the Real Estate Transaction does not exceed five million dollars $5,000,000.00

and provided the loss arises out of:

    1. Failure of the Issuing Agent, Approved Attorney or Approved Closing Vendor to comply with your written closing instructions to the extent that they relate to (a) the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, including the obtaining of documents and the disbursement of funds necessary to establish the status of title or lien, or (b) the obtaining of any other document, specifically required by you, but only to the extent the failure to obtain the other document affects the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, and not to the extent that your instructions require a determination of the validity, enforceability or the effectiveness of the other document, or

    2. Fraud, dishonesty or negligence of the Issuing Agent, Approved Attorney or Approved Closing Vendor in handling your funds or documents in connection with the closing to the extent that fraud, dishonesty or negligence relates to the status of the title to that interest in land or to the validity, enforceability, and priority of the lien of the mortgage on that interest in land.

If you are a lender protected under the foregoing paragraph, your borrower, your assignee and your warehouse lender in connection with a loan secured by a mortgage shall be protected as if this letter were addressed to them.

Conditions and Exclusions

1. The Company will not be liable to you for loss arising out of:

    A. Failure of the Issuing Agent, Approved Attorney or Approved Closing Vendor to comply with your

Page 1 of 2

FILED & ENTERED

SEP 14 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**ORDER NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>**RITA GAIL FARRIS-ELLISON,**<br><br>Debtor.<br><br>---<br><br>**JAMES LEE CLARK,**<br><br>Plaintiff.<br><br>vs.<br><br>**RITA GAIL FARRIS-ELLISON, et al.**<br><br>Defendants. | Case No. 2:11-bk-33861-RK<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-01830-RK<br><br>**ORDER ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT, DENYING SUMMARY JUDGMENT AND GRANTING MOTIONS IN PART TO STATE CERTAIN MATERIAL FACTS ARE NOT GENUINELY IN DISPUTE AND ARE TREATED AS ESTABLISHED IN THIS CASE** |

Pending before the court are the motions of Plaintiff James Lee Clark ("Plaintiff") for summary judgment. Plaintiff filed five separate motions for summary judgment. The First Motion for Summary Judgment was filed on May 12, 2014 (ECF 85). The Second Motion for Summary Judgment was filed on August 5, 2014 (ECF 93). The Third Motion for Summary Judgment was filed on August 11, 2014 (ECF 95). The Fourth Motion for Summary Judgment was filed on November 5, 2014 (ECF 106). The Fifth Motion for

1    Summary Judgment was filed on June 8, 2015 (ECF 155).  All five of Plaintiff's summary

2    judgment motions relate to Plaintiff's Second Amended Complaint, and all five motions

3    seek summary judgment against Defendant Rita Farris-Ellison ("Defendant").  The court

4    has held multiple hearings on Plaintiff's Motions for Summary Judgment, the last of which

5    was on August 25, 2015.  Plaintiff apparently filed multiple summary judgment motions to

6    address the problems with the moving papers identified by the court at prior hearings.  In

7    response to the Fifth Motion for Summary Judgment, counsel for Defendant filed a

8    declaration declaring that Defendant did not file a written response to this motion for

9    summary judgment in that neither his office nor Defendant was served with copies of

10   Plaintiff's moving papers.  ECF 171.  At the last hearing on Plaintiff's Motions for

11   Summary Judgment on August 25, 2015, Plaintiff appeared in pro per for himself.  James

12   A. Bryant II, Attorney at Law, appeared for Defendant.

13       The court briefly states its rulings on the motions and then gives its reasons for its

14   rulings.  The court denies summary judgment against Defendant Farris-Ellison because

15   Plaintiff has not met the standard for granting of summary judgment by showing as the

16   party with the burden of proof in this adversary proceeding to prove his claims by a

17   preponderance of the evidence that there are no genuine issues of material fact and that

18   he is entitled to judgment as a matter of law.  In his motions for summary judgment,

19   Plaintiff asserts that he is entitled to summary judgment against Defendant on grounds

20   that the state court judgment he obtained against Defendant in December 2013 is

21   collateral estoppel on his claims against Defendant for determination of dischargeability

22   of debt under 11 U.S.C. § 523(a)(2)(A).  Fourth Motion for Summary Judgment at 3–6;

23   Fifth Motion for Summary Judgment at 8–10.  However, based on the evidentiary record

24   before the court, Plaintiff has not established that the judgment he obtained in state court

25   against Defendant has preclusive effect because the state court in its judgment did not

26   indicate in the judgment or related order granting default judgment that judgment was

27   being entered on Plaintiff's fraud claim in his state court complaint.  Despite Plaintiff's

28

2

1 arguments, the state court judgment or related order did not specify among the claims of

2 the state court complaint, which included both fraud and non-fraud claims, which one or

3 ones was or were the basis for the judgment in favor of Plaintiff and against Defendant.

4 That is, by not specifying which claim judgment was entered on, judgment could have

5 been entered on any one claim, or all of them, which included non-fraud claims. One of

6 the required elements to apply collateral estoppel under California law is that the issue for

7 which preclusion is sought is that it must have been necessarily decided in the former

8 proceeding, and because the state court did not indicate in its judgment which claim was

9 being decided, judgment could have been entered on a claim other than fraud, and thus,

10 collateral estoppel cannot be applied here because this element is not satisfied, and

11 summary judgment cannot be granted. However, the court does grant Plaintiff's motions

12 in part to determine as an uncontested fact that Defendant Farris-Ellison owes Plaintiff a

13 debt of $100,000 based on the state court judgment.

14 Under Rule 56 of the Federal Rules of Civil Procedure, applicable to this adversary

15 proceeding under Rule 7056 of the Federal Rules of Bankruptcy Procedure, the party

16 moving for summary judgment has both an initial burden of production and the ultimate

17 burden of persuasion that there are no genuine issues of material fact and the moving

18 party is entitled to judgment as a matter of law. "Where the moving party has the

19 burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his

20 showing must be sufficient for the court to hold that no reasonable trier of fact could find

21 other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

22 1986), *quoted in,* 3 Wagstaffe, *California Practice Guide: Federal Civil Procedure Before

23 Trial,* ¶ 14:124 at 14-42 - 14-43 (2015). "This requires the moving party to establish

24 beyond controversy every essential element of its claim or defense: 'If the movant bears

25 the burden of proof on an issue, either because he is the plaintiff or as a defendant he is

26 asserting an affirmative defense, he must establish by peradventure *all* of the essential

27 elements of the claim or defense to warrant judgment in his favor.'" 3 Wagstaffe,

28

3

*California Practice Guide: Federal Civil Procedure Before Trial,* ¶ 14:126 at 14-43, *quoting, Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986)(emphasis in original), *and citing inter alia, Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003)(citing text).

Plaintiff's Second Amended Complaint, which is currently the operative complaint in this adversary proceeding, alleges seven causes of action against Defendants and Does 1 though 100: (1) violations of California Fair Debt Collection Act; (2) wrongful foreclosure under California Civil Code; (3) cancellation of trust deed under California Civil Code; (4) unfair business practices under California Business and Professions Code; (5) declaratory relief under California Civil Code; (6) accounting; and (7) fraud under 11 U.S.C. § 523.  ECF 71.  The seventh cause of action in Plaintiff's Second Amended Complaint alleges that "Defendant/Debtor Rita Ellison has perpetrated a fraud against Plaintiff and the court because she violated every law that permits valid bankruptcy" and "Resultingly, Plaintiff has suffered harm, and the prayer for relief in the Second Amended Complaint seeks "any and all relief" and "relief the court deems proper," but neither the seventh cause of action nor the prayer for relief for the cause of action requests denial of dischargeability of debt.  ECF 71 at 13.  Moreover, the seventh cause of action in the Second Amended Complaint asserted under 11 U.S.C. §523 does not specify which subprovision under that statute that Plaintiff is relying upon, even through the various subprovisions assert different causes of action.  ECF 71 at 16; *see also, e.g.,* 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6).  Because Plaintiff is a litigant appearing in pro per, the court accords some latitude to him in construing his pleadings, but his pleadings are not always well written and are sometimes difficult to understand.  The court attempts to construe them as best it can be done, given Plaintiff's in pro per status, but the court cannot construe them too liberally if this would deny the other parties procedural due process without adequate notice of his claims.

4

1    In the Complaint (ECF 1) in a second and different adversary proceeding brought

2  by Plaintiff against Defendant, Adv. No. 2:14-ap-01088 RK, Plaintiff alleges three specific

3  claims for nondischargeability of debt under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6)

4  with respect to the conduct described in the Second Amended Complaint at issue in this

5  adversary proceeding.   However, the court accords some latitude to Plaintiff as a self-

6  represented litigant and construes the seventh cause of action in the Second Amended

7  Complaint under 11 U.S.C. § 523 in the context of his Complaint in the other adversary

8  proceeding, Adv. No. 2:14-ap-01088 RK, that he is asserting three specific claims under

9  11 U.S.C. §523(a)(2)(A), (a)(4) and (a)(6).

10    Plaintiff bears the burden of proving his claims under 11 U.S.C. § 523(a)(2)(A),

11  (a)(4) and (a)(6) by a preponderance of the evidence that Defendant owes him a debt

12  which is excepted from discharge.  *See Grogan v. Garner*, 468 U.S. 279, 291 (1991).

13    The elements of a claim under 11 U.S.C. § 523(a)(2)(A) based on false pretenses,

14  false representation or actual fraud require Plaintiff to prove: (1) Defendant made a

15  representation; (2) Defendant knew the representation was false at the time he or she

16  made it; (3) Defendant made the representation with the intent to deceive; (4) Plaintiff

17  justifiably relied upon the representation; and (5) Defendant sustained losses as a

18  proximate result of the misrepresentation having been made.  *Ghomeshi v. Sabban (In re*

19  *Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010); *see also,* 4 March, Ahart and Shapiro,

20  *California Practice Guide: Bankruptcy*, ¶ 22:452 at 22-65 (2015).

21    The elements of a claim under 11 U.S.C. § 523(a)(4) based on fraudulent breach

22  of fiduciary duty require Plaintiff to prove: (1) Defendant was acting in a fiduciary

23  capacity; and (2) while acting in that capacity, the debtor engaged in fraud.  *Lovell v.*

24  *Stanifer (In re Stanifer)*, 236 B.R. 709, 713 (9th Cir. BAP 1999); *see also*, 4 March, Ahart

25  and Shapiro, *California Practice Guide: Bankruptcy*, ¶ 22:607 at 22-87.

26    The elements of a claim under 11 U.S.C. § 523(a)(4) based on embezzlement

27  require Plaintiff to prove: (1) property rightfully in the possession of the Defendant as a

28

1  nonowner; (2) the Defendant's appropriation as a nonowner of the property to a use other

2  than which it was entrusted; and (3) circumstances indicating fraud.  *Transamerica*

3  *Commercial Finance Corporation v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir.

4  1991); *First Delaware Life Insurance Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (9th

5  Cir. BAP 1997); *see also* 4 March, Ahart and Shapiro, *California Practice Guide:*

6  *Bankruptcy*, ¶ 22:640 at 22-94.

7        The elements of a claim under 11 U.S.C. § 523(a)(6) require Plaintiff prove that

8  Defendant both "willfully" and "maliciously" inflicted injury upon Plaintiff.  *Ormsby* v. *First*

9  *American Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010); *see*

10  *also,* 4 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*, ¶ 22:670 at 22-

11  97.  Under 11 U.S.C. § 523(a)(6), the "willful injury" requirement is met when Plaintiff

12  proves that the debtor had a subjective motion to inflict the injury or the debtor believed

13  the injury was substantially certain to occur as a result of his or her conduct.  *Petralia v.*

14  *Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001); *In re Ormsby*, 591 F.3d at

15  1206.  Further, the "malicious injury" requirement is met when Plaintiff proves that

16  Defendant committed: (1) a wrongful act; (2) done intentionally; (3) that necessarily

17  causes injury; and (4) that is committed without just cause or excuse.  *In re Jercich*, 238

18  F.3d at 1209.

19        Plaintiff's motions for summary judgment are based on grounds that the state court

20  judgment he obtained against Defendant has collateral estoppel effect that the debt she

21  owes him is the result of fraud.  First Motion for Summary Judgment, ECF 85 at 3–5;

22  Second Motion for Summary Judgment, ECF 93 at 3–6; Third Motion for Summary

23  Judgment, ECF 95 at 3–6; Fourth Motion for Summary Judgment, ECF 106 at 3–6; and

24  Fifth Motion for Summary Judgment, ECF 155 at 8–10.

25        With respect to the applicability of collateral estoppel or issue preclusion in debt

26  dischargeability actions, as a matter of full faith and credit, federal courts must give the

27  same preclusive effect to a state court judgment as would be given to that judgment

28

1  under the law of the state in which the judgment was rendered.  28 U.S.C. § 1738; *Bugna*

2  *v. McArthur (In re Bugna),* 33 F.3d 1054, 1057 (9th Cir. 1994); *Younie v. Gonya (In re*

3  *Younie),* 211 B.R. 367, 373 (9th Cir. BAP 1997).  Collateral estoppel, or issue preclusion,

4  applies in debt dischargeability proceedings under 11 U.S.C. § 523(a).  *In re Bugna,* 33

5  F.3d at 1056-1057 *citing Grogan v. Garner,* 468 U.S. at 284 and n. 11.  Under California

6  law, the application of collateral estoppel requires that: (1) the issue sought to be

7  precluded from relitigation must be identical to that decided in a former proceeding; (2)

8  the issue must have been actually litigated in the former proceeding; (3) it must have

9  been necessarily decided in the former proceeding; (4) the decision in the former

10  proceeding must be final and on the merits; and (5) the party against whom preclusion is

11  sought must be the same as, or in privity with, the party to the former proceeding.  *Lucido*

12  *v. Superior Court,* 51 Cal.3d 335, 341 (1990)(citations omitted); *see also, In re Younie,*

13  211 B.R. at 373, *citing Kelly v. Okoye (In re Kelly),* 182 B.R. 255, 258 (9th Cir. BAP

14  1995), *aff'd,* 100 F.3d 110 (9th Cir. 1996).  The party seeking to apply issue preclusion or

15  collateral estoppel has the burden of proving that each element is satisfied.  *In re Kelly,*

16  182 B.R. at 258 (citations omitted).  To sustain this burden, a party must introduce a

17  record sufficient to reveal the controlling facts and the exact issues litigated in the prior

18  action.  *Id.*  Any reasonable doubt as to what was decided in the prior action will weigh

19  against applying issue preclusion.  *Id.*

20        The fact that Plaintiff obtained the state court judgment against Defendant is

21  undisputed.  On June 19, 2013, this court entered an order in this case which granted

22  Plaintiff relief from the automatic stay to proceed with a pending action in state court

23  against Defendant, *James Clark v. Rita Farris-Ellison, et al.,* No. TC023636 (Superior

24  Court of California, County of Los Angeles).  ECF 86.  On December 30, 2013, upon

25  Plaintiff's request, the state court entered a judgment against Defendant in the amount of

26  $100,000.  *Judgment, Exhibit B to Fourth Motion for Summary Judgment.*  These facts

27  are not disputed as acknowledged by counsel for Defendant at the hearing on the

28

1 │ motions on August 25, 2015.  Colloquy between the court and Mr. Bryant, Counsel for

2 │ Defendant, *Audio File for Hearing on Motions for Summary Judgment*, August 25, 2015

3 │ at 2:27-2:28 p.m.

4 │      With respect to the application of collateral estoppel, Plaintiff argues that all of the

5 │ elements for collateral estoppel to apply exist here:

6 │     In this case, each of the foregoing elements is fully satisfied.  First, the issue
   │ to be litigated in this matter is whether or not Debtor [Defendant] defrauded
7 │ Plaintiff.  As described above, Plaintiff sued the Debtor for fraud in Los
   │ Angeles Superior Court.  The fraud claim asserted in the complaint is a
8 │ misrepresentation claim (Fifth Amendment Complaint, Exhibit A (nine
   │ causes of action).  The Los Angeles Superior Court specifically awarded
9 │ Plaintiff judgment on the fraud action (See election of Plaintiff to obtain fraud
   │ damages rather than contract damages in the Judge's decision, which is
10 │ part of Exhibit B to Clark Decl.), thus, making it clear that Plaintiff actually
   │ litigated the fraud claim and the Los Angeles Superior Court decided the
11 │ fraud claim against the Debtor.  Further the Judgment is final because no
   │ appeal has been filed and the time for filing an appeal has expired.  (Cal.
12 │ Rule of Court 8.104(a)).  Finally, the Debtor is the individual against whom
   │ the Judgment was entered and is the same individual who is the defendant
13 │ in this action.  Therefore, the Judgment collaterally estops the Debtor []
   │ relitigating the fraud claim.  *Grogan v. Garner*, 498 U.S. 279 (1991).
14 │

15 │ *Fourth Motion for Summary Judgment*, ECF 106 at 5–6.

16 │      The First Motion for Summary Judgment was procedurally defective to

17 │ demonstrate that collateral estoppel applies here because no signed copy of the

18 │ Judgment (an unsigned copy of the state court judgment was submitted, which is

19 │ insufficient) and no copy of the state court complaint was submitted.  ECF 85.  Copies of

20 │ the operative complaint in the state court action and the judgment entered are needed to

21 │ determine what claims were at issue in the state court action and what was the decision

22 │ of the state court in order for the court to determine if all of the elements of collateral

23 │ estoppel exist to apply here.  The Second Motion for Summary Judgment was

24 │ procedurally defective to demonstrate that collateral estoppel applies here because no

25 │ copy of the state court complaint was submitted, though it was represented that it was

26 │ attached to the Declaration of Adolf Glover in support thereof.  ECF 85 and 88.  The Third

27 │ Motion for Summary Judgment was procedurally defective to demonstrate that collateral

28 │

8

1  estoppel applies here because it was merely a resubmission of the Second Motion for

2  Summary Judgment, which had been rejected by the Clerk of Court for insufficient notice

3  of hearing. ECF 93 and 94.  The Fourth Motion for Summary Judgment remedied the

4  procedural defects of the earlier motions for summary judgment by submitting copies of

5  the signed state court judgment and the operative state court complaint, the Fifth

6  Amended Complaint. ECF 106 at 8–24.

7        The court has reviewed the Fourth Motion for Summary Judgment and evidence in

8  support of the Motion, and determines that the moving papers there do not establish that

9  all of the elements for collateral estoppel to apply here are satisfied to grant summary

10  judgment on Plaintiff's debt dischargeability claims under 11 U.S.C. § 523(a)(2)(A), (a)(4)

11  or (a)(6).  As discussed above, Plaintiff argued that each of the five elements for

12  collateral estoppel to apply are met here, and the court discusses each of Plaintiff's

13  arguments on each element.  As stated earlier, under California law, the application of

14  collateral estoppel requires that: (1) the issue sought to be precluded from relitigation

15  must be identical to that decided in a former proceeding; (2) the issue must have been

16  actually litigated in the former proceeding; (3) it must have been necessarily decided in

17  the former proceeding; (4) the decision in the former proceeding must be final and on the

18  merits; and (5) the party against whom preclusion is sought must be the same as, or in

19  privity with, the party to the former proceeding. *Lucido v. Superior Court,* 51 Cal.3d at

20  541.

21        Regarding element (1), identity of issues, Plaintiff argues: "First, the issue to be

22  litigated in this matter is whether or not Debtor [Defendant] defrauded Plaintiff.  As

23  described above, Plaintiff sued the Debtor for fraud in Los Angeles Superior Court.  The

24  fraud claim asserted in the complaint is a misrepresentation claim (Fifth Amendment

25  Complaint, Exhibit A (nine causes of action)." ECF 106 at 5.  Plaintiff argues that the

26  issues in this proceeding on his claim under 11 U.S.C. § 523 in his seventh cause of

27  action in the Second Amended Complaint, ECF 71, is identical to his misrepresentation

28

claim in his state court complaint, the Fifth Amended Complaint, which appears to be the

case in the Sixth and Seventh Causes of Action of that complaint for Constructive Fraud

and Fraudulent Concealment. *Exhibit A to Fourth Motion for Summary Judgment,* ECF

106. The court determines that this element is shown.

Regarding element (2), actual litigation of identical issue in prior proceeding,

Plaintiff argues: "The Los Angeles Superior Court specifically awarded Plaintiff judgment

on the fraud action (See election of Plaintiff to obtain fraud damages rather than contract

damages in the Judge's decision, which is part of Exhibit B to Clark Decl.), thus, making it

clear that Plaintiff actually litigated the fraud claim and the Los Angeles Superior Court

decided the fraud claim against the Debtor." ECF 106. Plaintiff's representation that the

state court specifically awarded him judgment on the fraud action is not substantiated as

the exhibit which allegedly demonstrates this, the "election of Plaintiff to obtain fraud

damages rather than contract damages in the Judge's decision, which is part of Exhibit B

to Clark Decl." is not in the moving papers. The court has carefully examined the moving

papers for the Fourth Motion for Summary Judgment in both the Judge's copy provided

by Plaintiff and the electronic copy on the case docket for this adversary proceeding, and

the alleged exhibit could not be found as it was not attached to Plaintiff's declaration or

any other document in the moving papers. The court also examined the Fifth Amended

Complaint in the state court action and the judgment in the state court action and did not

see that the state court had specifically awarded Plaintiff judgment on his fraud claims.

*Exhibits A and B to Fourth Motion for Summary Judgment.* Plaintiff's Fifth Amended

Complaint in the state court action alleged both fraud and non-fraud causes of action

against Defendant. *Exhibit A to Fourth Motion for Summary Judgment.* The fraud

causes of action in Plaintiff's Fifth Amended Complaint in the state court action against

Defendant were: (1) Third Cause of Action for Conversion; (2) Sixth Cause of Action for

Constructive Fraud; and (3) Seventh Cause of Action for Fraudulent Concealment. *Id.*

1  The non-fraud causes of action in Plaintiff's Fifth Amended Complaint in the state court

2  action against Defendant were: (1) First Cause of Action for Breach of Contract; (2)

3  Fourth Cause of Action for Negligence; (3) Fifth Cause of Action for Breach of Fiduciary

4  Duty; and (4) Ninth Cause of Action for Interference with Prospective Economic

5  Advantage. *Id.* The state court judgment itself only stated that ". . . [J]udgment shall be

6  entered in favor of Plaintiff against Defendant Rita Gail Farris Ellison in the amount of

7  $100,000, plus costs." *Id.* The judgment did not specify which cause of action it was

8  based. *Id.* Based on this record, the court determines that this element of collateral

9  estoppel is not shown.

10       Regarding element (3), the identical issue in prior proceeding was necessarily

11  decided, Plaintiff did not make a specific argument. However, Plaintiff's pleading may be

12  liberally construed that he meant to cover this element with his argument on the second

13  element of actual litigation: "The Los Angeles Superior Court specifically awarded Plaintiff

14  judgment on the fraud action (See election of Plaintiff to obtain fraud damages rather

15  than contract damages in the Judge's decision, which is part of Exhibit B to Clark Decl.),

16  thus, making it clear that Plaintiff actually litigated the fraud claim and the Los Angeles

17  Superior Court decided the fraud claim against the Debtor." ECF 106 at 5. However, as

18  discussed on the second element of actual litigation, there is no evidence that the state

19  court necessarily decided the issue of fraud in rendering its judgment in favor of Plaintiff

20  and as against Defendant. The state court judgment did not specify among the claims of

21  the Fifth Amended Complaint, the operative state court complaint, which included both

22  fraud and non-fraud claims, which one or ones was or were the basis for the judgment in

23  favor of Plaintiff and against Defendant. *Exhibits A and B to Fourth Motion for Summary*

24  *Judgment.* That is, by not specifying which claim judgment was entered on, the state

25  court could have entered its judgment on any one of the causes of action in the Fifth

26  Amended Complaint against Defendant, or all of them, which included non-fraud claims,

27  such as breach of contract or negligence. Colloquy between the court and Plaintiff, *Audio*

28

1   *File for Hearing on Motions for Summary Judgment* on August 25, 2015 at 2:32-2:33 p.m.

2   (Plaintiff acknowledging that it was his understanding that the state court was ruling on all

3   of his claims against Defendant).  As noted previously, the alleged exhibit of the "election

4   of Plaintiff to obtain fraud damages rather than contract damages in the Judge's decision,

5   which is part of <u>Exhibit B</u> to Clark Decl." was not in Plaintiff's moving papers and cannot

6   serve as the evidentiary basis of a showing that the issue of fraud was necessarily

7   decided in the prior state court litigation.  Thus, Plaintiff's statement that "[t]he Los

8   Angeles Superior Court specifically awarded Plaintiff judgment on the fraud action" is not

9   factually supported in the record and is not proven.  Accordingly, based on this record,

10  the court determines that this element of collateral estoppel is not shown.

11      Regarding element (4), the decision in the former proceeding must be final and on

12  the merits, Plaintiff argues: "Further the Judgment is final because no appeal has been

13  filed and the time for filing an appeal has expired.  (Cal. Rule of Court 8.104(a))."  ECF

14  106 at 5.  This element is not disputed.  The state court judgment by its terms indicates

15  that it is final.  *Exhibit B to Fourth Motion for Summary Judgment.*  Defendant has not

16  filed any opposition on grounds that the state court judgment is not final.  Based on this

17  record, the court determines that this element of collateral estoppel is met.

18      Regarding element (5), the same party or parties in privity from the prior state

19  court litigation, Plaintiff argues: "Finally, the Debtor is the individual against whom the

20  Judgment was entered and is the same individual who is the defendant in this action."

21  ECF 106 at 5.  This element is not disputed.  The same parties are involved in this

22  litigation as in the prior state court litigation.  Based on this record, the court determines

23  that this element of collateral estoppel is met.

24      Based on the foregoing, Plaintiff is not entitled to summary judgment on his

25  Fourth Motion for Summary Judgment based on collateral estoppel as not all of the

26  elements for collateral estoppel are met.

27

28

1    The court has reviewed the Fifth Motion for Summary Judgment and the evidence

2    in support of the Motion, and determines that the moving papers there do not establish

3    that all of the elements for collateral estoppel to apply here are satisfied to grant

4    summary judgment on Plaintiff's debt dischargeability claims under 11 U.S.C. §

5    523(a)(2)(A), (a)(4) or (a)(6).  In the Fifth Motion for Summary Judgment, Plaintiff makes

6    the same arguments in support of the applicability of collateral estoppel as in the Fourth

7    Motion for Summary Judgment, but Plaintiff submitted an additional exhibit in support of

8    his collateral estoppel arguments.  *Exhibit A to Fifth Motion for Summary Judgment.*  This

9    new exhibit is a copy of the state court's Minute Order entered on December 30, 2013

10   entitled "Ruling on Submitted Matter" relating to the state court judgment of the same

11   date.  *Id.*   In its Minute Order, the court made two express factual findings in support of

12   the judgment being entered for Plaintiff and against Defendant, which were: (1) "He

13   [Plaintiff] met his legal burden in proving that Defendant Rita Gail Farris-Ellison withheld

14   and refused to return $100,000.00 that belonged to the Plaintiff" and (2) "The Court

15   further finds that the Plaintiff did not meet his legal burden in his request for punitive

16   damages.  (Civil Code section 3294 subdivision (a))."  *Id.*

17   The state court's two factual findings in its Minute Order do not change the

18   analysis for collateral estoppel as to both the Fourth and Fifth Motions for Summary

19   Judgment.  The limited language of the state court's first factual finding that Defendant

20   "withheld and refused to return $100,000.00 that belonged to the Plaintiff" does not

21   indicate that such withholding and refusal to return money to Plaintiff was due to fraud or

22   willful and malicious conduct to support claims for nondischargeability of debt under 11

23   U.S.C. § 523(a)(2)(A), (a)(4) or (a)(6) and could have been attributable to any one of the

24   non-fraud causes of action in the Fifth Amended Complaint in the state court action, such

25   as breach of contract, negligence, breach of fiduciary duty or interference with

26   prospective economic advantage.  In its judgment and in its minute order stating its ruling

27   to enter judgment for Plaintiff, the state court did not specifically identify any of the claims

28

13

1    in Plaintiff's Fifth Amended Complaint as the basis of its judgment and did not specifically

2    state that it found for Plaintiff on his claims for fraud and conversion which would

3    probably support Plaintiff's argument for collateral estoppel here.

4           The court's second factual finding that Plaintiff failed to prove entitlement to

5    punitive damages indicates that it found that Defendant was not guilty of oppression,

6    fraud or malice, which undercuts Plaintiff's argument that collateral estoppel for fraud or

7    malice should apply here. *See* California Civil Code §3294(a) (stating "[i]n an action for

8    the breach of an obligation not arising from contract, where it is proven by clear and

9    convincing evidence that the defendant has been guilty of oppression, fraud, or malice,

10   the plaintiff, in addition to the actual damages, may recover damages for the sake of

11   example and by way of punishing the defendant."). Arguably, the state court's finding

12   that there are no grounds for punitive damages might support Defendant's position that

13   there was no fraud or malice, but for the different standard of proof under state law

14   requiring clear and convincing evidence for punitive damages, but here, the standard for

15   debt dischargeability in these proceedings is preponderance of the evidence as

16   discussed earlier. For the foregoing reasons, the court determines that Plaintiff has not

17   adequately demonstrated that collateral estoppel applies here to grant his motions for

18   summary judgment.

19          Even though Plaintiff cannot rely on collateral estoppel to prove his claims under

20   11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6), Plaintiff can still prove he is entitled to

21   summary judgment on his claims if he has enough evidence, with or without the state

22   court judgment, to prove there is an absence of a genuine issue of material fact with

23   respect to each of the previously mentioned elements under 11 U.S.C. § 523(a)(2)(A),

24   (a)(4) and (a)(6), which he has argued in his Fifth Motion for Summary Judgment. *See,*

25   *e.g.,* 3 Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial,* ¶

26   14:126 at 14-43, *quoting, Fontenot v. Upjohn Co.,* 780 F.2d at 1194, *and citing inter alia,*

27   *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d at 888. In addition to

28

1   collateral estoppel, Plaintiff makes two arguments in the Fifth Motion for Summary

2   Judgment that he is entitled to summary judgment based on (1) evidence that

3   Defendant's omitting him as a creditor on her original bankruptcy schedules is a

4   fraudulent act which makes the debt based on the state court judgment nondischargeable

5   under 11 U.S.C. § 523(a)(2)(A); and (2) such omission as well as her failure to pay the

6   judgment was a willful act that repeatedly caused him severe harm making the debt

7   nondischargeable under 11 U.S.C. § 523(a)(6).  Plaintiff has not shown that he is entitled

8   to summary judgment on these grounds as well.

9          First, Plaintiff has not shown, based on these arguments, that he would be entitled

10   to judgment as a matter of law.  Plaintiff argues that Defendant fraudulently omitted him

11   from listing him as a creditor on her bankruptcy schedules, even though he had a state

12   court judgment against her.  *Plaintiff's Fifth Motion for Summary Judgment,* ECF 155 at 5

13   ("*Prima facie,* the debt is $100,000 judgment awarded to Clark; yet, Farris willfully did not

14   disclose that judgment.  She had several endeavor; when she first filed; later she had

15   time post-judgment (she was served, see Attachment "E" in PSOUMFS).  Then, Farris

16   waited another several months BEFORE she disclosed Clark as her secured creditor on

17   her bankruptcy petition.  As long as Clark can sustain his burden under this paradigm, as

18   stated below, the court can granted summary judgment.")  This does not make sense as

19   a matter of chronology because Defendant was required to file her bankruptcy schedules

20   with her bankruptcy petition when she filed it on June 1, 2011.  ECF 1 and 3 in Case No.

21   2:11-bk-33861 RK.  The bankruptcy schedules which Defendant filed on June 1, 2011 did

22   not list Plaintiff as a creditor.  ECF 3.  However, Plaintiff did not obtain the state court

23   judgment until sometime later on December 30, 2013.  *Exhibit A to Fifth Motion for*

24   *Summary Judgment.*  The court does not see how Defendant would have listed Plaintiff

25   as a judgment creditor before the judgment was entered.

26          Plaintiff's argument may be really that Defendant could have listed Plaintiff as a

27   creditor based on his pending state court lawsuit on her original bankruptcy schedules

28

1   filed on June 1, 2011, which she eventually did when she filed amended bankruptcy

2   schedules on April 18, 2012 listing him as a creditor from a lawsuit filed in October 2009

3   and indicating that his claim was disputed.  2:11-bk-33861-RK, ECF 61.  If this is the

4   case, Plaintiff has not shown how the elements of the claims under 11 U.S.C. §

5   523(a)(2)(A) and (a)(6) are met here since they are not discussed or shown how they are

6   satisfied based on supporting evidence.  Plaintiff does not explain, let alone show, how

7   Defendant's failure to list him on her original bankruptcy schedules as a creditor harmed

8   him in themselves to support a § 523(a) claim since this is a "no distribution" case and he

9   would not have been affected as a claim creditor and Defendant amended her schedules

10  to add him as a creditor only 10 months after she filed her original bankruptcy schedules

11  in April 2012, whereupon afterwards in June 2012 he filed his action to determine debt

12  dischargeability, which would have probably been needed anyway for him to collect his

13  claim outside of bankruptcy.

14          Accordingly, the court determines that Plaintiff has not met his burden of showing

15  that he is entitled to summary judgment and therefore, his request that the court enter

16  summary judgment against Defendant should be denied.

17          However, Federal Rule of Civil Procedure 56(g), made applicable through Federal

18  Rule of Bankruptcy Procedure 7056, "[I]f the court does not grant all the relief requested

19  by the motion, it may enter an order stating any material fact—including an item of

20  damage or other relief—that is not genuinely in dispute and treating the fact as

21  established in the case."  Based on the undisputed evidence submitted on Plaintiff's

22  motions for summary judgment as well as the acknowledgment by counsel for Defendant

23  during oral argument that Plaintiff has a judgment for $100,000 against Defendant, the

24  court determines that the following are material facts that are not genuinely in dispute and

25  will be treated as established in this case:

26          (1) Defendant Rita Farris-Ellison is indebted to Plaintiff James Clark in the amount

27              of $100,000.00 based on the judgment of the Superior Court of California for

28

James A. Bryant II, SBN 255652
4929 Wilshire Blvd. Suite 1010
Los Angeles, CA 90010
Telephone:       310-860-6231
Facsimile:       310-802-3829
Email:           james.bryant@thecalawgroup.com

Attorney for Debtor
Rita Ellison

FILED

DEC 18 2019

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

In re

RITA GAIL ELLISON,

                        Debtor.

_____

JAMES CLARK,

                        Plaintiff,

          v.

RITA G. ELLISON;

                        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:11-bk-33861-RK
Adversary No. 2:12-ap-01830-RK

Chapter 7

STIPULATION, AGREEMENT AND
ORDER GRANTING RELIEF FROM
THE AUTOMATIC STAY – NON
BANKRUPTCY FORUM AND TO
ABSTAIN THIS MATTER PENDING
THE OUTCOME OF THE NON
BANKRUPTCY FORUM

AND ORDER THEREON

STIPULATION, AGREEMENT AND ORDER GRANTING RELIEF FROM THE

AUTOMATIC STAY – NON BANKRUPTCY PROCEEDING AND TO ABSTAIN THIS MATTER

PENDING THE OUTCOME OF THE NON BANKRUPTCY PROCEEDING

*Recitals*

A.       On September June 1, 2011 (the "Commencement Date"), Rita Ellison

(hereinafter "Debtor") commenced a cause under chapter 11 title 7 of the United States

1

STIPULATION, AGREEMENT AND ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY –
NON BANKRUPTCY PROCEEDING AND TO ABSTAIN THIS MATTER PENDING THE OUTCOME

Bankruptcy Code, in the United States Bankruptcy Court of the Central District of California (the "Court").

B.        Upon the commencement of the Debtor's chapter 7 case, the commencement of any action relating to, and any attempt to collect on any alleged claim, including anticipated or pending litigation, was stayed under section 362(a) of the Bankruptcy Code (the "Automatic Stay").

C.        On May 10, 2012, the Debtor received a discharge from the Court.

D.        On June 21, 2012, an adversary proceeding was commenced by Plaintiff James Clark ("Clark") in this instant case.

E.        On or about November 30, 2018, Clark informed Debtor's counsel and the Court that he intended to file a state court action that required relief from the Automatic Stay, and upon obtaining that relief he would be able to proceed with the filing of this proceeding (the "State Court Action").

F.        Clark further explained to the Court that the State Court Action that he intended to file was directly related to the underlying claims set forth in this action, which stem from that certain real estate transaction by and between Clark, Debtor, Just That EZ Financial, Lenders Escrow Inc. and Flagstar Bank amongst others.

G.        On November 30, 2018, Plaintiff filed a Motion for Relief from Stay –Non Bankruptcy Forum ("RFS"). [DKT NO. 94].

H.        On December 17, 2018, Debtor filed a Motion to Abstain this proceeding pending the outcome of the State Court Action ("MTA"). [DKT NO. 414].

I.        Debtor filed the MTA, as both Clark and Debtor agree that the outcome of the anticipated State Court Action may bring full resolution to this current matter pending before the Court.

J.        Clark seeks, and Debtor is willing to consent, to the modification of the Automatic Stay, on the terms and subject to the conditions set forth herein, so as to allow the

2

commencement and prosecution of the State Court Action against Just That EZ Financial, Lenders Escrow Inc and others, to settlement or judgment.

K.     Debtor seeks, and Clark is willing to consent, to abstain this pending action, so that Clark may proceed with the State Court Action in order to pursue his claims that he believes may potentially resolve this matter, and until those issues are prosecuted, the parties are unable to fully proceed in this case.

*Stipulation and Agreement*

1.     *Modification of Automatic Stay.* Upon the approval of this Stipulation and Agreement by the Court, the Automatic Stay shall be modified, solely to the extent of permitting the Clark to (a) commence and prosecute to settlement or judgment the State Court Action with respect to the 2009 real estate transaction, and any subsequent appeals or writs of review taken by any of the parties thereto, solely for the purpose of determining the liability and damages, if any, with respect to those claims.

2.     *Scope of Stay Relief.*   Except to the extent expressly set forth in paragraph 1 hereof, the provisions of section 362 of the Bankruptcy Code, including, without limitation, those provisions prohibiting execution, enforcement or collection of any judgment that may be obtained against Debtor from and against any assets or properties of the Debtor's estate (as defined in section 541 of the Bankruptcy Code), shall remain in full force and effect, and neither the Clark nor any of his agents, attorneys or representatives shall take any action or attempt to cause any action to be taken to collect all or any portion of any such judgment from the assets or properties of the Debtor's estates, pending resolution of this Adversary Proceeding. Nothing contained herein shall constitute or operate as a waiver or modification of the Automatic Stay so as to permit the prosecution against any of the Debtors of any claims by any person or entity other than Clark with respect to the State Court Action. ***Debtor's stay is only valid until the US Bankruptcy Court adjudicates the matter-the adversary proceeding is pending and let it be known and agreed to that Rita G. Farris-Ellison has been a) adjudged to have breached her***

3



*fiduciary duty, b)adjudged to and is liable to pay the $100,000 state court judgment, c) the next state court filing will adjudicate and determine when the deed shall be canceled as well as the note.*

3.    *Abstention of this Adversary Proceeding.* Upon approval of this Stipulation and Agreement by the Court, this current adversary proceeding Case No. 2:12-ap-01830-RK shall be abstained pending the outcome of the State Court Action. Upon resolution of the State Court Action, Clark shall submit a declaration to the Court, informing the Court that the State Court Action has come to a final resolution, which includes appeals, if any. This declaration must be submitted to the Court within thirty (30) days following the resolution.

4.    *Authority.* The Clark represents and warrants that he has full knowledge of and have consented to this Stipulation and Agreement and that he has full authority to execute this Stipulation and Agreement.

5.    *Bankruptcy Court Approval.* This Stipulation and Agreement is subject to the approval of the Court and shall be of no force and effect unless and until an order approving the same has been entered. If this Stipulation is not approved by the Court, it shall be null and void and shall be referred to or used for any purpose by and of the parties hereto.

6.    *Reservation of Rights, Claims and Defenses.* Except as expressly provided for herein, the parties reserve all of their respective rights, claims and defenses.

7.    *Modification of Stipulation.* This Stipulation and Agreement may be not be amended orally.

8.    Clark's additional terms to be included:

**These are Clark's additional terms:**

**a) That the state court action will be filed against all parties, Rita Farris, Just that EZ, Lenders Escrow and Flagstar Bank with the additional cause of action to cancel the deed and the note,**

4

*b) That your client will be and must cooperate with and respond to any and all discovery, including and up to depositions, interrogatories, requests for admissions, etc., without delay, impasse or difficulty,*

*c) In the event the state court action does not reach a settlement or judgment, I, Clark will without delay continue with the adversary proceeding to final judgment without any challenges, obstructions or comportment to obfuscate or deny Clark's recovery by you or your client, Rita Farris-Ellison,*

*d) All motions and procedures are to on calendar should any dispute arise*

Dated: December 17, 2018

JAMES A. BRYANT

By: _____
Name: James A. Bryant
Attorney for Debtor

JAMES CLARK

By: _____
Plaintiff

ORDER

TYE ABOVE STIPULATION IS APPROVED
& SO ORDERED BS TYE COURT.

DATED: 12/18/18

NeaBoit KwAN
U.S. BANKRUPTCY COURT

5